## PATRICK J. HAYES *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.    November 15, 1904. — January 4, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Negligence,* Employer's liability.    *Railroad.*

A railroad company is not liable to a workman employed in loading freight at its freight house into cars, who is injured when hauling a heavily loaded truck over a running board or skid serving as a bridge between two freight cars, from one end of the skid slipping off its support because not fastened by a cleat and causing the workman and his load to fall, if it is the custom to fasten the ends of the skids by nailing cleats across them and this is left to the workmen, who find hammers, nails and small pieces of wood for the purpose wherever they can, by going to different parts of the freight house or a short way outside of it.

TORT, with counts at common law and under the employers' liability act, by a trucker employed by the defendant to load freight into cars at its freight houses on Congress Street, in that part of Boston called South Boston, for injuries from falling with a heavily loaded truck while passing from one freight car to another, by reason of the skid * or running board, over which he was drawing his truck, slipping off at one end on account of the alleged negligence of the defendant in allowing it to remain unfastened.    Writ dated August 17, 1900.

In the Superior Court *Bell,* J. at the close of the plaintiff's evidence ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*W. B. Grant,* for the plaintiff.

*J. L. Hall,* for the defendant.

LORING, J.    The plaintiff was one of a gang of workmen employed in loading freight from the house where it was re-

---

* In *Foster* v. *New York, New Haven, & Hartford Railroad, ante,* 21, a similar appliance was called a "rising board" and in the present case most of the witnesses spoke of the skid as a "riseboard."   "Skid" seems to be the more general term for such a bridge, as the term "riseboard" when used accurately implies a difference in level, which in this case if it existed was of no consequence.   In *Murphy* v. *New York, New Haven, & Hartford Railroad, ante,* 18, the appliance used for the same purpose was a "brow" with hooks at one end and bevelled at the other.

ceived by the defendant, into the cars which were to carry it to its destination.   There were several tracks laid parallel with the side of the freight house, and the course of business was to use the intervening cars as a bridge to reach a car in the train on the outside track.   Skids were placed from the house to the first car and between cars on the intervening tracks.   On the day of the accident the plaintiff was directed to carry a large case on his truck to the car on the fourth track.   The case was so large that it had to be placed on the iron end of his truck, instead of being loaded on the inside of the iron end, and the plaintiff had to move forward in a stooping position in pulling the truck, to prevent it from tipping off the end of the truck. As he passed over the skid between the car on the third and that on the fourth track the skid slipped and the plaintiff, the skid and the case he was pulling fell to the ground causing the injuries complained of.   This was the first time he had been over this skid on that day.   The jury were warranted in finding that the skid slipped because it was not cleated.

On the conclusion of the plaintiff's evidence the presiding judge directed a verdict for the defendant, and the case is here on an exception to that ruling.

There was evidence that the defendant's rule was that all skids should be cleated.   The skids in house No. 7 were fitted with iron pins at each end of the skid, to keep the skid in place. But those in use at house No. 6, the house in question, had no pins.   The practice had been to nail down cleats across the ends of these skids, to keep them from slipping when the cars were not of the same height, but not to cleat them when they were even in height.   It also appeared that the matter of laying the skids and of cleating them was left to the workmen.   The defendant's contention is that it was not liable for the skid in question not having been cleated ; that it had left that matter to the workmen and had provided them with the necessary material.

So far as the skids were concerned over which the plaintiff had to go from the warehouse to the car on the outside track, the safety of the plaintiff was dependent on the temporary adjustment of instrumentalities in the course of the work on which the plaintiff was employed.   If the employer leaves such a

matter to the workmen, furnishing them with the means of making the instrumentality safe, his duty to his employees is performed. Without citing all the cases, it is enough to refer to *Johnson* v. *Towboat Co.* 135 Mass. 209, and to the last cases on the point; *Miller* v. *New York, New Haven, & Hartford Railroad,* 175 Mass. 363; *Haskell* v. *Cape Ann Anchor Works,* 178 Mass. 485, 487.

One witness testified that the defendant had not supplied hammer, nails and boards for this purpose, but on cross-examination he testified that "all that you need to cleat a board is a little piece of wood nailed down so as to keep the running board steady. Sometimes there are lots of blocks there. You can find a few blocks and pieces of wood about the house, and they could get nails and things to drive them in if they wanted. . . . There is generally lumber on the outside platform right by the door of the house and any one could get that lumber that wanted to." Another of the plaintiff's witnesses testified on direct examination: "There were no special boards furnished for that purpose. He would go into the house and find some kind of a board and break it up for a cleat. There would be boards that he could find there, and sometimes he might have a hard time in finding any. Sometimes he might have to go outside of the house to get the board, but he would go where it was handiest to find them; that is, find them the quickest way he could do so; that the gang would keep working." Again: "Upon the day of the accident he didn't have any hammer. No car man in that house carried a hammer especially. He had to go to different parts of the house to get nails and hammer, and if he saw a board that he thought needed cleating he would go and hunt up the hammer and nails. He would have to go to different parts of the house. The hammer and nails were lying in a box." And on cross-examination: "There were plenty of nails in the house, and though he had none with him he could get them if he wanted to and he could get all the boards that he wanted. There were plenty of them."

On this evidence we are of opinion that the defendant had furnished the material necessary to cleat the skids. See in this connection *Callahan* v. *Phillips Academy,* 180 Mass. 183.

What distinguishes this case from *Murphy* v. *New York, New*

*Haven, & Hartford Railroad, ante,* 18, is that in that case the matter of adjusting the brow used as a skid was left to a super-intendent, and there was evidence that he was negligent in regard to the placing of the brow.

*Exceptions overruled.*