LEWIS J. ARNOLD *vs.* HARRINGTON CUTLERY COMPANY.

Worcester.     October 19, 1905. — December 1, 1905.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, LORING, & BRALEY, JJ.

*Negligence,* Employer's liability.   *Evidence,* Opinion: experts.

In an action by a workman employed in a cutlery factory at cutting knife blades from steel upon a press with a punch and die, against his employer, for the loss of an eye from its being struck by a small fragment of steel, owing to the alleged negligence of the defendant in using unannealed steel, there was evidence, that the plaintiff had worked for the defendant for three years and a half and until the day before the accident had used annealed sheet steel, that the steel which he was using at the time of the accident was unannealed, that it was not common for the manufacturers of such tools as the plaintiff was making to use unannealed steel, and that unannealed steel was not proper for such use, being harder and more brittle than annealed steel, that the machine in cutting the unannealed steel on two occasions at least threw sparks, and threw the splinter which entered the plaintiff's eye, that the plaintiff had no previous knowledge of the danger of using unannealed steel, that the day before the accident there was a flash and an unusual noise as the punch struck the steel, that the plaintiff went to the defendant's manager and told him of the occurrence, saying that the piece of steel was so hard that he could not file it, to which the manager replied that it was curious, and that if they should order steel like that they probably could not get it made, and when the plaintiff said that he never saw anything like it before the manager said "No, and you probably never will again." *Held,* that there was evidence that the defendant was negligent in using the unannealed steel and that such negligence caused the plaintiff's injury, that there was evidence of due care on the part of the plaintiff, who had a right to rely on the assurance of the manager the day before the accident that he probably would not encounter a like danger again, and, also, that the plaintiff did not assume the risk of such an accident.

In an action by a workman in a cutlery factory against his employer for the loss of
an eye from its being struck by a small fragment of steel flying out from a ma-
chine which he was operating, the plaintiff in putting a hypothetical question to
an expert can assume the existence of the fact that the machine in cutting steel
" threw sparks and splinters," if it has been shown that on two occasions at least
the machine threw sparks and that on one occasion it threw a splinter which
entered the plaintiff's eye, as the jury may infer that the machine threw other
sparks and splinters that were not noticed. .

In an action by a workman in a cutlery factory against his employer for the loss
of an eye from its being struck by a small fragment of steel flying out from a
machine which he was operating, where the plaintiff contended that the acci-
dent was caused by the negligence of the defendant in using unannealed steel
instead of annealed steel which is not so hard and brittle, the plaintiff, against
the defendant's objection, was allowed to ask an expert: " What do you say as
to its being a reasonably safe process in manufacturing cutlery, using the pro-
cess of cutting edged tools, to use steel which has not been annealed for stock."
The witness answered that it " was not a reasonably safe process." *Held,* that
the judge in admitting the evidence must have interpreted the question as ask-
ing for the opinion of the witness whether there were risks from the use of such
steel and how great the risks were, which is a proper matter for the opinion of
an expert, and that a verdict for the plaintiff should not be set aside on account
of this interpretation, especially as it did not appear that the attention of the
judge was called to another possible interpretation of the question, treating it
as calling for the opinion of the witness whether with such a probability of dan-
gerous consequences it was reasonably safe for the defendant to use such steel,
that being a question for the jury which an expert should not be permitted to
answer.

TORT by a knife cutter, employed in the defendant's cutlery
factory at Southbridge, for the loss of an eye alleged to have
been caused, in the first count, by the negligence of the defend-
ant's superintendent in furnishing the plaintiff with steel of an
inferior quality and unsuitable for the use to which it was put;
in the second count, by a defect in the ways, works or machin-
ery of the defendant consisting of an improper press and im-
proper steel; in the third count, by the defendant's furnishing
the plaintiff with defective, improper and inferior steel; and, in
the fourth count, by the defendant's failure to furnish the plain-
tiff with safe and suitable tools and appliances for his work.
Writ dated May 21, 1904.

At the trial in the Superior Court *Gaskill,* J. ruled that the .
plaintiff could not recover on his first and second counts, and
refused to order a verdict for the defendant or to rule that the
plaintiff could not recover on his third and fourth counts.

The jury returned a verdict for the plaintiff in the sum of
$2,500 ; and the defendant alleged exceptions.

*H. Parker, C. C. Milton & D. F. Gay,* for the defendant.

*J. R. Thayer, A. P. Rugg & H. H. Thayer,* for the plaintiff.

KNOWLTON, C. J.   The plaintiff was working for the defendant at cutting knife blades from steel with a punch and die, upon a press, and a small fragment of the steel flew, and struck him in one of his eyes, thereby causing the loss of that eye. This action is brought to recover damages, on the ground that the defendant was negligently using unannealed steel.   The plaintiff had worked for the defendant at punching knife blades about three years and a half, and, until the day before the accident, had used annealed sheet steel.   The steel which he was using at the time of the accident was of a different kind, which was not properly described as annealed steel, or known in the trade by that name, but was commonly called floor annealed or semi-annealed steel.   Upon some of the issues the testimony was contradictory; but there was evidence which would warrant the jury in finding that it was not a common practice among manufacturers of edged tools, such as the defendant was making, to use unannealed steel, and that unannealed steel was not proper for such uses.   The evidence tended to show that the defendant did not buy this steel as annealed steel.   Unannealed steel is likely to be harder and more brittle than annealed steel. Although there was much dispute on this point, the jury might have found that the defendant was negligent in using this steel at the time of the accident, and that the injury to the plaintiff was caused by this negligence.

There was evidence tending to show that the plaintiff was in the exercise of due care.   It did not appear that he had any previous knowledge of the danger in using this kind of steel, and there was no evidence that he was careless in the manner of using it.   After the flash and the unusual noise, as the punch struck the steel in the afternoon of the day before the accident, he went to the defendant's manager and had a talk with him about it.   After telling him of the occurrence, and saying of the piece of steel, " Here is a place so hard I cannot file it.   The file won't touch it "; the manager replied, " Why, that is curious, and if we should order steel like that they could not make it for us."   When the plaintiff told him he never saw anything like it before, the manager said, " No, and you probably never

will again." Here was a statement from one upon whose judg-
ment he properly might place some reliance, that probably he
would not encounter a like danger again. The jury might find
that the experience of that afternoon did not make it negligent
for him to continue the work the next day.

There is no ground for the contention that he assumed the
risk of such an accident. There was no contractual assumption
of the risk, for the contract of employment had no reference to
the use of this kind of steel; and there was no subsequent as-
sumption of the risk, for it cannot be said as a matter of law
that he knew and appreciated the risk. Indeed, the evidence
tends strongly to show that he did not know or appreciate it.

Two questions have been argued as to the admissibility of
certain testimony of an expert witness, which was introduced
subject to the defendant's exception. The objection to the first
hypothetical question is that it assumed the existence of a fact
which had not been proved, namely, that the machine, in cutting
the steel, "threw sparks and splinters." The evidence was
uncontradicted that on two occasions at least, the machine threw
sparks, and that on one occasion it threw a splinter which
entered the plaintiff's eye. The jury might have thought that
it threw other splinters that were not noticed, or sparks that
were not thought of. We think the question was not incom-
petent on this ground.

The witness was allowed to testify that, in his opinion, the
use of steel which had not been annealed, for manufacturing
such cutlery as the defendant was then making, "was not a
reasonably safe process." The defendant objects that the ques-
tion* did not call for the opinion of the expert as to what would
be likely to occur; but rather for his opinion as to whether,
with such a probability of dangerous occurrences as he testified
to in giving his opinion, it would be reasonably safe to take the
risk of them. There was some ambiguity in the question, and
if the presiding judge had understood it as the defendant now
wishes to have us interpret it, the expert should not have been
permitted to answer. After first ascertaining the facts, it was

---

* The question was as follows: " What do you say as to its being a rea-
sonably safe process in manufacturing cutlery, using the process of cutting
edged tools, to use steel which has not been annealed for stock? "

for the jury alone to determine how great risks it was reasonable to take.   But we think that the question was intended to obtain the opinion of the witness as to whether there were risks from the use of such steel, and how great the risks were.   This was a matter for the opinion of an expert.   We have no doubt that the judge interpreted the question in this way, and we are of opinion that the verdict should not be set aside on account of this interpretation, especially as it does not appear that the nature of the objection to the question was stated to the judge.

*Exceptions overruled.*