MICHAEL J. CONROY *vs.* MORRILL AND WHITON CONSTRUC-
TION COMPANY.

Suffolk.    January 18, 1907. — February 28, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence*, Employer's liability.

In an action by a mason against his employer, a corporation engaged in doing the mason work for a large coal pocket, for personal injuries from an iron beam falling upon him while being hoisted by means of a derrick maintained and operated by the defendant, if it appears that the accident was due to the negligence of a foreman of another corporation, which was doing the iron work for the coal pocket, in fastening the iron beam to the fall of the derrick with a chain which was intended to be used for heavier beams and was too large and inflexible to "bind" and hold the small beam that was being hoisted, and it also appears that the chain was suitable for some of the hoisting that was to be done and that the defendant provided proper straps and slings for the hoisting of small beams like the one that slipped through the chain and fell on the plaintiff, there is no evidence of negligence on the part of the defendant.

TORT for personal injuries incurred while in the employ of the defendant, a corporation engaged in doing the mason work of a coal pocket which was being constructed at the State House in Boston.    Writ dated October 10, 1902.

In the Superior Court the case was tried before *Holmes*, J. together with an action brought by the same plaintiff against the G. W. and F. Smith Iron Company, which so far as material to

the exceptions in that case is described *ante*, 468.   The accident happened about ten o'clock in the forenoon of December 5, 1901. The plaintiff, an experienced mason about twenty-six years of age, had been employed by the defendant about six months and had been working in the coal pocket about three weeks.

At the time of the accident the Smith Iron Company was hoisting an iron beam six feet long and weighing about one hundred pounds into position by means of a derrick erected near the centre of the coal pocket, which was at the time an excavation about one hundred feet square and twenty feet deep.   One Sears, the foreman of the Smith Iron Company, had fastened the beam to the fall of the derrick by means of an iron chain, and while the beam was being hoisted to its place at the top of the coal pocket it slipped through the chain, fell and struck the plaintiff who was working in the construction of the wall of the coal pocket.

The plaintiff testified that at the time of the accident he was laying a stone for the defendant; that he did not see the iron beam which struck him; that the derrick which hoisted the iron beams was in the centre of the coal pocket; that iron beams were scattered around the bottom of the coal pocket; that Sears was the foreman for the Smith Iron Company; that Sears did all the iron work there and was the foreman over the iron workers; and that he had seen him pick out the iron and tell " the tag man or whoever it was " where to go with it.   He further testified that he had seen him hitch on iron beams before the accident; that he had seen him hitch on iron beams sometimes three or four times in a half hour and sometimes not for a couple of hours; that Sears had been doing this every day for about a month; that the iron men took orders from Sears; and that he had never heard any one give orders to Sears; that employees of the defendant had never hitched on iron beams; and that one Olson, the tag man on the derrick, gave the order to the engineer before the accident happened.

He further testified that Sears would go down from above, pick out the iron beams, put the chain on and tell them to hoist; that he saw Sears make the hitch on I-beams; that sometimes he would use a strap; that Sears often would make two turns and sometimes one turn around the beams.

One Prendergast, called by the plaintiff, testified that he had been an iron worker and rigger for nineteen years; that at the time of the accident he was operating one of the two derricks in the coal pocket; that he was standing about forty feet from the plaintiff; that he saw the beam which struck the plaintiff as it was in the air; that it was fastened with a single hitch; that he saw Sears give orders where to put the iron, where to place it and what beam to hitch on to it; that Sears picked out the iron; that he had seen him hitch on iron beams; that the iron beam which struck the plaintiff was about six feet long, six inches high and had flanges at the top and bottom about four inches wide; that the beam probably weighed about two hundred pounds; that the iron chain was a large chain capable of raising seven tons; that its links were about three inches long and seven eighths of an inch in diameter; that there were half a dozen straps on the premises and that the use or purpose of those straps was to hitch on to such a load as that beam, which was too small for a chain; that those straps or ropes were used for small beams; that he had seen Sears make hitches on the iron beams.

Olson, called by the plaintiff, testified that at the time of the accident he was a rigger and iron worker for the defendant; that he was a tag man on the derrick which hoisted the iron beam that caused the accident; that he saw Sears make the hitch on the iron beam which hit the plaintiff; that Sears made a single hitch; that no boards were put on the beam before the hitch was made; that there were straps or ropes on the premises at the time of the accident; that these were used for hoisting small iron beams; that the chain on the end of the fall was about fifteen feet long; that after Sears made the hitch he told the witness to go ahead; that no one but Sears had anything to do with making the hitch; that there was ice on the beam. He testified that the Smith Iron Company did all the iron work; that he never made a hitch on the iron beams; that it always was made by the Smith people. He further testified that at the time of the accident there were slings upon the premises; that there were some in the cellar and some in the locker; that these slings had been used on short beams the day before the accident; that he had seen Sears take one turn before the day of the accident;

that he could see Sears make the single hitch; that he had been a tag man fifteen or sixteen years. On cross-examination he testified that whenever he hoisted iron beams he acted under the orders of Sears; that he never hoisted iron beams under the direction of the foreman of the defendant; that Sears always gave orders in regard to the iron work; that he had seen all the iron put in and that the defendant had nothing to do with the iron work.

At the close of the plaintiff's evidence the defendant rested its case, and the G. W. and F. Smith Iron Company proceeded to introduce evidence in defence of the case against that company. At the close of all the evidence the defendant asked the judge to order a verdict for it. This the judge refused to do, and submitted the case to the jury, instructing them that the defendant was not to be affected at all by the evidence put in after it had rested its case. The jury returned a verdict for the plaintiff in the sum of $3,550; and the defendant alleged exceptions.

*J. Lowell & J. A. Lowell,* for the defendant.

*C. Reno,* for the plaintiff.

SHELDON, J. This case was argued with the case of the same plaintiff against the G. W. and F. Smith Iron Company, *ante,* 468, but presents somewhat different questions. The defendant rested at the end of the plaintiff's case, and excepted to the refusal of the presiding judge to order a verdict in its favor, and this presents the only question.

The plaintiff's only contention as to negligence of the defendant is that there was evidence that the iron chain furnished by the defendant for hoisting the beams was unsafe and unsuitable for use with the small beam which fell and caused the accident, for the reason that the chain was too large and heavy and inflexible to " bind " and afford sufficient frictional resistance to hold the beam while being hoisted. There was evidence that this was the case; but it also appears, and we do not understand it to be disputed by the plaintiff, that this chain was proper and suitable to be used for some of the hoisting to be done, and that the defendant provided proper straps and slings for the hoisting of small beams like the one in question. It cannot be said to be negligence in the defendant that it provided suitable and different chains and appliances for the hoisting of heavy and light

weights, if each instrumentality that it provided was suitable for the work which it was intended to do; and we find no evidence that this was not the case.  The accident was not due to any negligence of the defendant in furnishing an improper appliance, as in the cases relied on by the plaintiff.  *Ford* v. *Eastern Bridge & Structural Co.* 193 Mass. 89.  *Carroll* v. *Metropolitan Coal Co.* 189 Mass. 159.  *Arnold* v. *Harrington Cutlery Co.* 189 Mass. 547.  *White* v. *Perry Co.* 190 Mass. 99.  *Kalleck* v. *Deering*, 169 Mass. 200.  *Mowbray* v. *Merryweather*, [1895] 1 Q. B. 857.  The negligence from which the plaintiff suffered was the act of Sears in selecting from the proper appliances furnished by the defendant one which was not adapted for this particular piece of work ; and the plaintiff has not argued that Sears was in any sense acting for the defendant.  No doubt, if the defendant had been guilty of the negligence complained of, it could not be said as a matter of law that the intervening negligence of Sears would have relieved it from liability, *Conroy* v. *Smith Iron Co.*, *ante*, 468 ; but there was no evidence upon which this could have been found.  It is not necessary to examine the cases in which a master who has furnished both proper and improper tools or appliances has been held not to be liable for injury occasioned to a servant by a fellow servant's negligent selection of an improper one for use.  See *Wolfe* v. *New Bedford Cordage Co.* 189 Mass. 591 ; *Morrison* v. *Whittier Machine Co.* 184 Mass. 39 ; *Hayes* v. *New York, New Haven, & Hartford Railroad*, 187 Mass. 182, 183, 184 ; *Miller* v. *New York, New Haven, & Hartford Railroad*, 175 Mass. 363 ; *Young* v. *Boston & Maine Railroad*, 168 Mass. 219 ; *McKinnon* v. *Norcross*, 148 Mass. 533 ; *Johnson* v. *Boston Tow-Boat Co.* 135 Mass. 209.

We are of opinion that a verdict should have been ordered for the defendant ; and it is unnecessary to consider any of the other questions presented.

*Exceptions sustained.*