PAUL U. PATRUM et al. v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

**Division Two, June 23, 1914.**

1. **NEGLIGENCE: Coupling Cars: In Customary Way: Assumption of Risk.** While deceased was on a car, which he had mounted for the purpose of setting the brakes, defendant's other servants were attempting to effect a coupling with a stock car which was six or eight feet from the one he was on, and in doing so jammed another car against the stock car with such force as to cause it to reach and start the car on which deceased was, and it to roll along the down grade, and him to fall. *Held*, that if the coupling was done in the usual, customary and ordinary way, defendant was not guilty of negligence, and the doctrine of the assumption by a servant of the usual and ordinary risks of his employment precludes recovery; but if the coupling was made in an unusual and unnecessary way, by an impact, bump or jolt out of all proportion to the necessities of the situation and circumstances, then there was no ordinary care such as defendant was required to exercise and and defendant is liable.

2. **———: Assumption of Risk.** The servant does not assume the negligence of the master or that of a vice-principal. The term "assumption of risk" is used in this jurisdiction to express the mere hazards which appertain to a dangerous avocation unaffected by the negligence of the master. But when the servant enters into or remains in the master's service with actual or constructive knowledge of defects or dangers arising from the master's negligence and without a promise of remedy, that, in this jurisdiction, is spoken of as contributory negligence, but in others as true assumption of risks.

3. ———: ———: **Accident.** The master is not liable for an *injury to his servant which resulted from an accident pure and simple and without the fault of anyone, especially where such accident is one incident to the dangerous and hazardous work in which the servant is engaged.* In such case the servant is held to have assumed the risks ordinarily incident to his occupation.

4. ———: ———: **Coupling Car: Insufficient Evidence.** Where the only evidence that the attempted coupling of a stock car which was caused to strike the one on which the deceased brakeman was standing, with another car, was not done in the usual, customary and ordinary way, is the testimony of a non-expert who had shipped a good deal of stock, to the effect that he "considered it a hard jolt," that he "considered it too hard" and that after two or three unsuccessful attempted couplings, the one that caused the stock car to roll against the one on which the brakeman was and caused him to fall "was a good deal harder," and the immediate cause of the brakeman's fall is dark, a verdict for his children cannot stand.

Appeal from Christian Circuit Court.—*Hon. John T. Moore,* Judge.

REVERSED.

*W. F. Evans* and *John H. Lucas* for appellant.

(1) The defendant insists that neither in pleading, nor in proof can the plaintiffs recover, hence the court committed error in submitting the cause to the jury. Harrington v. Railroad, 104 Mo. App. 671; Shields v. Railroad, 100 Mo. App. 517; Williams v. Railroad, 119 Mo. 316; Hager v. Railroad, 207 Mo. 302; McIntosh v. Railroad, 58 Mo. App. 285; Jackson v. Railroad, 104 Mo. 448; Bradley v. Railroad, 138 Mo. 302; Saxton v. Railroad, 98 Mo. App. 494; Ryan v. McCully, 123 Mo. 636; Yarnal v. Railroad, 75 Mo. 575; Keown v. Railroad, 141 Mo. 86; Maher v. Railroad, 64 Mo. 267. (2) Instruction A, given by the court of its own motion tells the jury that plaintiffs can recover notwithstanding the exercise of ordinary care by defendant. Porter v. Railroad, 199 Mo. 82; Vermillion v. Parsons, 118

Mo. App. 260; Pim v. Transit Co., 108 Mo. App. 713; Behen v. Transit Co., 186 Mo. 430. (3) If the cars were handled in the ordinary and usual manner, then there was no negligence. Peck v. Transit Co., 178 Mo. 617. There was no evidence that the cars were negligently handled and the court should have so declared. Reno v. Railroad, 180 Mo. 469; Henselman v. Railroad, 88 Mo. App. 123. If the death was the result of an accident, there could be no recovery, and the court should have so declared. Peck v. Transit Co., 178 Mo. 617.

*Patterson & Patterson, G. A. Watson* and *G. D. Kirby* for respondents.

(1) The petition is substantially sufficient. (a) The charge of negligence is sufficiently specific—especially after verdict. Even a general averment of negligence is good after verdict. Tachner v. Express Co., 72 Mo. App. 13; Clem v. Railroad, 119 Mo. App. 245; Howell v. Mode, 111 S. W. 641. (b) Even if it were proper to charge that the car was struck with unusual or extraordinary force this allegation is necessarily implied and the defect is cured by the verdict in plaintiff's favor. Dodge v. Coal & Coke Co., 115 Mo. App. 501. (2) The question of negligence was one for the jury—where reasonable men may differ upon a given state of facts the question of negligence is one for the jury. Nagel v. Railroad, 75 Mo. 653; Manerman v. Siemerts, 71 Mo. 101; Hulin v. Railroad, 92 Mo. 440; O'Mellia v. Railroad, 115 Mo. 205. There being substantial evidence to support the verdict, the appellate court should not disturb the finding and the evidence should be viewed in its most favorable aspect in support of the verdict. Cimliff v. Hansman, 97 Mo. App. 467; Land & Lumber Co. v. Tie Co., 79 Mo. App. 543; Sinclair v. Railroad, 70 Mo. App. 588; Winters v. Railroad, 99 Mo. 509; Memphis v. Mathews, 28 Mo. 248;

Lyman v. Harvester Co., 68 Mo. App. 637; Phippin v. Railroad, 196 Mo. 321; Cohn v. Kansas City, 108 Mo. 387; Stoddard v. Railroad, 65 Mo. 514; Parsons v. Mayfield, 73 Mo. App. 309; Huth v. Dohle, 76 Mo. App. 671; Choquette v. Railroad, 152 Mo. 257; Dowling v. Wheeler, 117 Mo. App. 169; Shoe Co. v. Sally, 114 Mo. App. 222; Levels v. Railroad, 196 Mo. 606; Little v. Pump Co., 122 Mo. App. 620; Smoot v. Kansas City, 194 Mo. 573; Treffinger v. Railroad, 110 Mo. App. 453. The question of the weight of the evidence was for the jury and the trial court. Conrad v. Railroad, 116 Mo. App. 517; Hurley v. Railroad, 120 Mo. App. 262; Bretzfelder v. Waddle, 122 Mo. App. 262; Gorton v. Ins. Co., 115 Mo. App. 69. It is only when the appellate court is convinced that the verdict is the result of prejudice or passion that it will interfere. Franklin v. Railroad, 188 Mo. 533. The fact that the preponderance of the evidence is against the verdict furnishes no foundation for the charge that the verdict is the result of prejudice or passion. Hirsh v. Grand Lodge, 78 Mo. App. 358; Harrison v. Lakenan, 189 Mo. 581; Investment Co. v. St. Joseph, 191 Mo. 459. The jury are at liberty to disregard the testimony of several witnesses even when uncontradicted. Roos v. Clark, 14 Mo. App. 594; Gregory v. Chambers, 7 Mo. App. 557; Clark v. Skrimski, 77 Mo. App. 172; Tower v. Panley, 76 Mo. App. 287; Wolff v. Campbell, 110 Mo. 114. Where the testimony of witnesses conflicts with the physical facts and the common observation of men, the testimony must yield and need not be accepted as the basis of a verdict. Phippin v. Railroad, 196 Mo. 321; Hayden v. Railroad, 124 Mo. 566; Kelsey v. Railroad, 129 Mo. 362. (3) The charge of negligence was supported by the evidence. The defendant owed to plaintiff the exercise of due care and the failure to use such care constituted negligence. Negligence is the absence of due care and due care is care adjusting itself to the circumstances of the case. Dean v. Rail-

road, 199 Mo. 386; Wharton on Negligence (2 Ed.), sec. 3; McMahon v. Express Co., 132 Mo. 641; Wilkinson v. Railroad, 101 Mo. 93; Webb's Pollock on Torts (En. Am. Ed.), p. 112 et seq. There is an implied agreement on the part of the master when it employs the servant and puts him at a dangerous place to work, that it will use reasonable care to protect him. Brady v. Railroad, 135 Mo. 393. (4) The servant never assumes the risk of his master's negligence. Phippin v. Railroad, 196 Mo. 321. If ordinary care would have prevented the injury the risk is not assumed. Blanton v. Dold, 109 Mo. 64. The only risks which the servant assumes are those which remain after the master has exercised ordinary care. Charlton v. Railroad, 200 Mo. 413. Nor does the servant assume the risk of dangers arising from the negligence of the master in furnishing defective appliances by continuing the service after he is advised of it. Pauck v. Beef & Provisions Co., 159 Mo. 477; Settle v. Railroad, 127 Mo. 336. When the work requires men to do it then the men are classed as appliances. Thorpe v. Railroad, 89 Mo. 663; Haviland v. Railroad, 172 Mo. 112. The servant assumes the risk of every danger arising from the work itself, but if the master's negligence aggravates the danger the servant may recover. Nash v. Dowling, 93 Mo. App. 156; Parsons v. Packing Co., 96 Mo. App. 381.

FARIS, J.—Plaintiffs, as the minor children of Henry A. Patrum, a brakeman on a freight train, employed and killed by defendant while in the line of duty, sue for his death.

Deceased, a widower, 43 years old, long in service as a railroad man and experienced in the work and duties of a brakeman, was killed at Mansfield, Missouri, on the tenth day of August, 1906. Plaintiffs had a verdict for $5000 damages, but thereof entered

259 Mo.—8

a *remittitur* for $500 and had judgment for $4500, from which the defendant in the usual way appealed to the St. Louis Court of Appeals. Territorial jurisdiction being shifted by legislative enactment, the case in the course of time came to the Springfield Court of Appeals, wherein Judge Cox, having disqualified himself for that he had sat therein *nisi*, and Judges GRAY and NIXON being unable to agree, the Hon. V. O. Coltrane, a well-known and able member of the Springfield bar, was agreed on by stipulation as special judge and as such rendered an opinion herein affirming the case. In this opinion of affirmance Judge GRAY concurred, but Judge NIXON dissented, and deeming the views expressed in conflict with the holdings of this court and of the other courts of appeals, requested that the case be sent here, which was accordingly done.

The specific allegation of negligence as pleaded in the case, coupled with a general statement of the facts, is thus stated in the petition:

"That said Patrum in the performance of his duty, and while in the line of his work as such brakeman, climbed upon said rear car for the purpose of setting the brake thereon and stopping said car; that while he was so engaged, and while he was on the top of said car setting said brake, the agents, servants and employees of defendant engaged with him in handling said engine and cars, they then knowing that the said Patrum was in such position and so engaged, negligently and carelessly drove said engine against the other of said cars which were between the engine and the car on which the said Patrum then was as above stated, with such force as to drive said car against the car on which the said Patrum was engaged in setting the brake; that the impact of said cars so driven together was so sudden, forceful and violent that as a result thereof the said Patrum was thrown from said car to the track, one of said cars passing over his body, so injuring him that as a result thereof, he died."

The answer was a general denial; the defense was the assumption of risk; of which more anon.

The facts in brief as developed by the testimony offered by plaintiffs (the defendant offered none, merely contenting itself with demurring to that offered by plaintiffs), are about as follows: There are at Mansfield on defendant's line of railroad, three tracks, called in the record the "main track," "passing track" and "stock track." The train on which Henry A. Patrum (hereafter for brevity called the deceased), was employed as a brakeman, stopped on the day that he was killed, on the passing track, for the purpose, among others, perhaps, not here pertinent, of picking up a stock car loaded with hogs belonging to one W. J. Tripp. The engine was cut off from its train and run over to the north end of the stock track for the purpose of doing the switching made necessary in coupling on to and in picking up the carload of hogs. There was upon the stock track, besides the carload of hogs, at least one other car which was empty. By large inference other cars were thereon, but whether there were or not, such other cars cut but little figure in the case. This stock track was on a grade, the south end being lower than the north end, on which the engine came in, but what per cent the grade was nowhere appears in the record. In picking up the stock car it became necessary, as the witness Vosbury (who was conductor on another freight train which had halted on the main line), says in his testimony, to make three couplings. In this work Vosbury, who desired to use the same tracks for switching, was assisting Young, the head-brakeman, and the deceased. They were attempting to make at least two of these three couplings at once. At the first attempt one coupling was made by the head-brakeman Young, but Vosbury failed to make his, thus necessitating the backing up of the engine and the cars attached thereto by the first coupling, and a second attempt was made. By reason

of the striking of the engine against the cars, the stock car with the hogs therein, which had failed to couple on the first attempt, was pushed up and struck against an empty car to the southward standing on the stock track and on a down grade. This empty car began rolling off down grade toward the south and toward the switch leading to the main line. Deceased, as it was his duty to do, climbed up on the empty car to stop it and to this end commenced setting the brake. Whether he had concluded this work prior to falling, as hereinafter stated, the record does not show. While deceased was setting the brake and while he had hold of the brake wheel and was facing toward the north and toward the oncoming engine, the second attempt to couple was made. The stock car was thrust by the impact back against the empty car upon which deceased was, and he was thrown or fell between the empty car and the stock car and was run over by the latter and received the injuries which shortly caused his death. When deceased fell, Vosbury, who was standing near, caught hold of him and attempted to pull him from between the cars, but before he was able to do so the first wheel caught him, ran over one leg and a second wheel ran almost straight down the other leg, badly crushing and mangling him. The signal to the engineer to back up at the time he did back up and when the empty car was struck and deceased was thrown therefrom and injured, was given by Young, the head-brakeman, who gave what is called among trainmen a "heavy signal," which seems to be a signal used when a coupling is attempted after one or more efforts to couple have failed. At the time this signal was given the stock car and the empty car, which deceased was on and attempting to stop by braking it, were some six or eight feet apart.

The defendant as stated put in no testimony whatever but merely interposed a demurrer to that offered by plaintiffs. The bone of contention in the case

is as to whether the trainmen, the fellow-servants of deceased, used ordinary care in making the coupling in which they were engaged when deceased lost his life. There is no very serious contention lodged in the case upon any other point. If this work was done in the usual, customary and ordinary way, in which freight trains are coupled and switching done thereon, as defendant contends, then defendant was not guilty of negligence, and the doctrine of the assumption by deceased of the usual and ordinary risks of his employment, precludes recovery. But if this coupling was made in an unusual, unnecessary way by an impact, bump or jolt, out of all proportion to the necessity of the situation and circumstances, then there was not ordinary care, such as defendant was required to exercise so as not to injure deceased, and plaintiffs should recover.

Some questions are raised as to the introduction of testimony, as also of the giving of instructions and of the sufficiency of the charge of negligence in the petition, but these we shall discuss in the opinion, if we shall reach them.

The serious question in the case, the one most strenuously urged upon us by defendant and the one upon which this case split in the Court of Appeals, is whether there was testimony enough to take this case to the jury.

Coupling Cars.

Upon this point plaintiffs offered four witnesses, one of whom was F. C. Vosbury, the conductor on the waiting freight train; another was W. M. Young, the head-brakeman upon deceased's train, both of whom were assisting deceased in doing the switching about which he was killed. We need not refer to the testimony of these witnesses, except to say that they both testified that in making the coupling by which the stock car was thrust against the empty car and deceased was caused to fall, there was nothing out of the ordinary; that this work was done just as it is ordinarily

done; that there was no unusual force, and no more force than was necessary under the circumstances, and that there was no difference in the handling of that engine and those cars as compared to the usual and customary manner of doing this work on freight trains ordinarily used a hundred times a day. It is true that witness Young says that the car was "struck a little bit hard; not harder than any other time." This qualification, if it be such, which may be said to be doubtful, the witness explained by saying that the engine was new and a little hard to handle, which characteristic appertains, this witness tells us, to all new engines. If this is so, and it must be so for this case, since plaintiffs' witness swears it and nobody denies it, danger accruing from such characteristic of new engines, being a usual and ordinary condition, is among the risks which deceased assumed. In other words, the testimony of both Vosbury and Young without any question shows that there was nothing unusual in the manner in which the work was done on this unfortunate occasion, and if their testimony stood alone in the case, it makes out for defendant a complete defense.

The witness Tripp, the owner of the hogs which were in the car that ran over deceased, was riding in the engine at the the time of the impact. He only says as to the nature of this collision that he "considered it a hard jolt." On cross-examination he says that there had been already made two or three attempted couplings, and that the concussion in question which caused the falling of deceased, was a good deal harder. But being asked as to whether it was harder than necessary or not, he answered that *he would not say,* but that *he considered it too hard,* and that *he thought defendant was handling his hogs hard.* This witness also admitted that he had had no experience as a railroad man, but that he had been around the yards a good deal and had shipped

a good deal of stock.  Some serious contradiction of this witness appears in the record in that it is shown that in a statement formerly made by him, he stated that the engine was handled in the usual and ordinary way as carefully as could be done.  He, however, denied making this statement, and while it may well be that the triers of fact would have been abundantly justified in finding that he did make it, yet it was a question for them and we have no right to consider it here in the condition of the case before us.

One J. A. Johnson, an experienced freight conductor, employed by defendant company, who was not immediately present at the time the deceased was killed, was called by plaintiffs, apparently as an expert witness, and who testified that in his opinion it would be necessary to drive a car eight or ten feet in order to make such a coupling as was made on the occasion in question; that such coupling could be done closer, but that that was the ordinary distance used.  The appositeness of this statement arises from the fact that other evidence in the case showed that the empty car after being hit in the first attempt to couple ran some fifty feet (down grade) and the stock car some six or eight feet less.  Being further asked as to the amount of care usual and customary in making couplings and switching while brakemen are engaged in setting brakes and in known positions of danger on freight trains, he answered that the usual custom was to "slam into them and make the coupling as quick as one can; we never look to see where the brakeman is or what position he is in."

This is the whole of the pertinent testimony upon the identical point in issue, as this record discloses it to us.  The testimony of Johnson, in our view, does not aid the plaintiffs.  Its pertinency to the facts and conditions is difficult to see.  While it may be true and be conceded for the purposes of this case as true that ordinarily it will be necessary only to drive a car

eight or ten feet, in order to couple thereto, yet it is reasonably clear, even to a wayfaring man, that much will depend on the number of cars in the lot to which the car sought to be coupled is situated; much also will depend upon the grade; since it is apparent that if a car, as the empty one in question here is shown to have been, is rolling down grade, it will ordinarily continue to roll down grade until it is stopped by braking or by an obstacle, and that the distance which it rolls and therefore the distance that the engine and cars attached thereto must run, or back up before a coupling is made, will depend on how far the empty car has rolled before the brakes are applied. We are utterly unable to see any pertinency under the facts in this case to the testimony of Johnson on this phase of the case.

The witness Tripp admits his lack of experience, and inability to qualify as an expert. Is his expressed opinion that it was a hard jolt, or to use his own words, that "he considered it a hard jolt," of sufficient weight to prove want of the ordinary care required here? It has been often said that it is not (Ray v. Railroad, 147 Mo. App. 332; Wait v. Railroad, 165 Mo. 612; Hedrick v. Railroad, 195 Mo. 104; Hawk v. Railroad, 130 Mo. App. 658); and when we have reference to the fact that he refused to say that this impact was harder than necessary, but merely contented himself by saying that he "considered it too hard," it is fairly clear that his testimony can have but little if any weight. It is but the opinion or conclusion of a non-expert witness, which is ordinarily not even admissible.

There is no difficulty about the law of this case. As the learned special judge says in his opinion, which is before us, the chief difficulty lies with the facts and in applying them to the law. Under the doctrine found in the Missouri cases dealing with so-called assumption of risk the employee "does not assume the negligence of the master

Assumption of Risk.

or that of a vice-principal.'' The moment negligence comes in at the door it may well be said that the doctrine of assumption of risk goes out at the window. [Curtis v. McNair, 173 Mo. 270; Brady v. Railroad, 206 Mo. 509; Tinkle v. Railroad, 212 Mo. 445; Huston v. Railroad, 129 Mo. App. 576.] We have here in Missouri, whether logically or illogically we need not here pause to discuss, come to use the term ''assumption of risk'' to express the mere hazards which appertain to a dangerous avocation when unaffected by the negligence of the master. When, however, the servant enters into or remains in the service of the master with actual or constructive knowledge of defects arising from the master's negligence and without a promise of remedy, we speak of this in our Missouri courts as contributory negligence. Other jurisdictions for the most part, call it true assumption of risk. [Duffey v. Consolidated Block Coal Co., 147 Iowa, 225; Martin v. Light Co., 131 Iowa, 724; Arnold v. Harrington Cutlery Co., 189 Mass. 547; Denver & R. G. R. R. Co. v. Burchard, 35 Colo. 539; Choctow O. & G. Ry. Co. v. Jones, 77 Ark. 367; Union Pacific Ry. Co. v. O'Brien, 161 U. S. 451; Higgins v. Williams, 114 Cal. 176; Fort Wayne v. Christie, 156 Ind. 172; Moylon v. McDonald Co., 188 Mass. 499; Hickey v. Taaffe, 105 N. Y. 26, and numerous cases cited in note appended to Scheurer v. Banner Rubber Co., 28 L. R. A. (N. S.) 1223.] In the case of Mumford v. Chicago, etc., Ry. Co., 128 Iowa, 685, l. c. 689, the court said in defining the latter phase of assumption of risk or actual assumption of risk, that ''the entire doctrine of waiver or assumption of risk is based upon knowledge, actual or implied, and consent, or the equivalent thereof; that is to say, if the injured party in the exercise of ordinary care should have known of the defect, he in law is held to have knowledge thereof. If with knowledge, actual or implied, he continues in his master's employ without protest and promise of repair, he is held to have acqui-

esced in, consented to, and assumed the risk. But without this knowledge, actual or implied, there can be no waiver.''

Our Court of Appeals has ably and comprehensively defined, but without carefully distinguishing assumption of risk from so-called assumption of risk, in the case of Rigsby v. Oil Well Supply Co., 115 Mo. App. 297, l. c. 307, thus: ''The servant, upon entering the service of the master, impliedly assumes by his contract of hire, for the same compensation, the hazards which result from such risks as are ordinarily incident to the employment in which he engages, and in addition to these risks, ordinarily incident, etc., he also either by entering or continuing in the service and using, without complaint, defective machinery or appliances, or without complaint, continuing to labor in an unsafe or dangerous place, assumes the risks of such defective machinery or appliances or unsafe or dangerous place, provided he knew not only that the machinery or appliances were defective or the place unsafe, but also knew and understood and appreciated the dangers which were liable to result therefrom.''

Likewise it was said in the case of Duffey v. Consolidated Block Coal Co., 147 Iowa, l. c. 228, as follows: ''The term 'assumption of risk' has come to be used in a twofold sense. It is often said that an employee assumes the ordinary risk that is incident to his employment. This form of assumption of risk is often pleaded by defendants in personal injury cases, although it is quite unnecessary to do so. Assumption of risk in its true sense has reference to those risks arising out of the negligence of the master when such negligence is known to the employee, and the danger therefrom appreciated by him. In the first form herein indicated a specific pleading of assumption of risk of the ordinary dangers incident to an employment is a mere amplification of the general denial, and adds nothing to it in a legal sense. In the second form herein in-

dicated it is an affirmative defense, and must be specifically pleaded as such."

In the case of Martin v. Light Co., 131 Iowa, 724, l. c. 735, it was said: "The very common use of this phrase with reference to two widely different legal propositions is doubtless responsible for the confusion here existing. When a servant enters the employment of a master he is presumed to have taken into consideration such danger and exposure to injury as is naturally incident to or connected with such service, even when the master has exercised all reasonable care for his servant's safety. . . . This so-called 'assumption of risk' inheres in the contract of employment òr in the relation of master and servant and need never be pleaded as a defense. A simple denial of the charge of negligence raises the question of this assumption sufficiently for all purposes of the case."

In a very learned and comprehensive note appended to the case of Scheurer v. Banner Rubber Co., 28 L. R. A. (N. S.) 1221 and 1217, apposite to both points here under present discussion, it is said: "Assumption of risk, as applied to the ordinary risks of the service, is merely a rhetorical phrase used to connote the idea that the master is not an insurer against injuries resulting from dangers which cannot be removed by the exercise of due care upon his part. In the second sense, assumption of risk has a vastly different significance; it implies negligence on the part of the master and a prima-facie liability, but it also implies a waiver of the effects of that negligence if it injures the servant. It is an affirmative defense to rebut that prima-facie liability due to proof of the master's negligence. Assumption of risk in the first sense is not a distinct proposition of law, but merely a mode of expression which adds nothing distinctive. In the second sense it is one of the fundamental principles of the law of master and servant, and is relied upon by the master to relieve himself from the prima-

facie liability arising from his negligence more than is any other defense which is open to him.''

And on said page 1217 preceding this the same learned author of this note, said: ''But in many cases this becomes an important question as a matter of pleading. The rule is universal that the servant must allege and prove that his injury was not due to one of the ordinary risks of the service, or, in other words, that the master had been negligent. On the other hand, the weight of authority is to the effect that assumption of risk, as used with reference to risks created by the master's negligence, is an affirmative defense and consequently must be pleaded and proven by the defendant.''

So much we have said here in no desire either to presently change the Missouri view of these questions or to unduly criticise it, but merely to explain our consideration of assumption of risk upon a general denial which, unless we note that by the use of this expression in this case, we refer to the ordinary hazards of a dangerous vocation absent negligence of the master, might appear both illogical and erroneous. The facts of this case do not require any criticism of the Missouri rule, for the defendant offered no evidence whatever, relying upon its demurrer to that offered by the plaintiffs. If plaintiffs' evidence discloses negligence, this judgment should of course be affirmed; if it does not we must reverse it.

Granting for the sake of argument (because what we say is not intended to be a close, careful statement of the rule), that the doing of this coupling by which deceased lost his life in an unusual way by the striking of one car with another in a manner unnecessarily hard, or harder than the circumstances and conditions presented required—the dangerous position of deceased being kept in mind and known to the servants of defendant—constitutes such negligence as to be actionable; we are yet from this record unable to say

that it was not an accident pure and simple (Young
v. Mo. Pac. Ry., 93 Mo. App. l. c. 275); that it was not
such an accident as occurs without the fault of anyone,
the immediate cause of which is dark, and that it was
not one incident to the dangerous and hazardous occu-
pation of deceased, and one as to which he will be
held to have assumed all risks thereto ordinarily inci-
dent.    This doctrine of assumption of risk is almost
universal.    It has been applied many times in all juris-
dictions wherever the common law prevails.    It has
been applied in this State in many cases and is a living
part of the law.    The circumstances under which the
doctrine arises and to which it has been applied are
so well settled that we need no more than refer to the
cases wherein the matter is discussed.    [Williams v.
St. L. & S. F. Ry. Co., 119 Mo. l. c. 323; Jackson v.
Railroad, 104 Mo. 448; Bradley v. Railroad, 138 Mo.
293; Beasley v. Linehan Transfer Co., 148 Mo. 413;
Haviland v. K. C., P. & G. Ry. Co., 172 Mo. 106; Wink-
ler v. St. Louis Basket & Box Co., 137 Mo. 394; Czer-
nicke v. Ehrlich, 212 Mo. 386.]

We must take the law as we find it, not as we
would wish it to be.    The matter of compensation to
the minor children of a father killed while engaged in
hazardous employment for the benefit of the public at
large, in an unfortunate case such as this, is a mat-
ter presenting crying equities to the Legislature, which
body can alone afford relief.

We are unable to see anything under the facts of
this case as we read them in the record and as we have
tried to present them here, which distinguish it from
the cases which we cite and which forbid recovery
upon the doctrine of assumption of risk, and it there-
fore follows that this case should be reversed, and it is
so ordered.    *Walker, P. J.,* and *Brown, J.,* concur.