## JOHN HAGGARD, Appellant, v. SOUTHWEST MISSOURI RAILROAD COMPANY, Respondent.

### Springfield Court of Appeals, February 28, 1920.

1. **MASTER AND SERVANT: Failure to Furnish Light Held Negligence.** Where artificial light is necessary to render safe the place for work, the failure of master to exercise ordinary care to provide such light renders him liable for consequent injuries.

2. ————: **Risk of Master's Negligence Not Assumed.** A servant does not assume the risk of the master's negligence; knowledge of the negligence being an element to be considered only on question of contributory negligence.

3. ————: **Contributory Negligence in Continuing Work with Knowledge of Danger Question for Jury.** Contributory negligence in continuing to work with knowledge of negligence of master is always a question for the jury, except in cases where the danger rendered by known negligence is so obvious that no ordinarily prudent man would have continued in the service; and before a court can declare such a condition it must be so apparently negligent for him to continue work that reasonable minds do not differ upon it.

4. ————: **Contributory Negligence in Working in Unlighted Place Question for Jury.** Whether a car cleaner injured by falling into a pit in a car barn, was guilty of contributory negligence *held* for the jury, although he knew the pit was there, and that employer had failed in its duty to furnish lights.

5. ———: **Risk of Falling into Unlighted Pit Held Not Assumed.** A car cleaner working in a car barn did not assume the risk of injury by falling into a pit which the master had negligently failed to light, although he knew of presence of the pit and the failure to light.

Appeal from Circuit Court of Jasper County.—*Hon. J. D. Perkins,* Judge.

REVERSED AND REMANDED.

*Frank H. Lee, John T. Craig* and *Ray Bond* for appellant.

*McReynolds & McReynolds* and *J. H. Flanigan, Jr.* for respondent.

FARRINGTON, J.—This is a master and servant case. The plaintiff filed suit against defendant for damages on account of injuries alleged to have been received by him while in the employ of the defendant. A number of grounds of negligence were assigned but the case when submitted by the plaintiff eliminated all grounds of negligence except the following: "That the defendant negligently and carelessly failed to furnish sufficient light in said barn and by reason thereof plaintiff was unable to see said pit and was liable to fall therein." The cause was submitted to the jury, which returned a verdict for defendant. The plaintiff appeals, alleging that the court erred in modifying an instruction asked by him, and assigning that the same error was incorporated in the instructions asked by the defendant and given by the court.

The plaintiff asked an instruction which was modified by the court over his objection and exception. We set out the instruction as given by the court after modification, and italicize that part which the court added of its own motion, and that part which the plaintiff now contends constituted error against him.

"You are instructed that it is admitted in this case that the plaintiff, on the 17th day of May, 1918, was working for defendant as its employee, in defendant's car barn at Webb City, Missouri, and that the defendant maintained beneath the tracks in said car barn pits to enable workmen to get under said cars; and you are instructed that it was defendant's duty, as plaintiff's employer, to exercise ordinary care to provide plaintiff a reasonably safe place in which to perform his work; and if you believe from the evidence that defendant negligently and carelessly failed to cause said barn and the place where plaintiff worked to be sufficiently lighted to enable plaintiff to see and avoid said pit, *and if you further believe that plaintiff did not know that said pit was there,* (italics ours) and that by reason of such failure, if any, to cause said barn to be sufficiently lighted, said place was rendered dangerous and unsafe for plaintiff working in said barn, and if you further find from the evidence that on said 17th day of May, 1918, plaintiff, while performing his duties as the employee of defendant and on account of being unable to see said pit as a result of said barn not being sufficiently lighted (if you believe he was unable to see said pit on account its not being sufficiently lighted) stepped into said pit and was injured thereby, and if you further find that the plaintiff at said time was exercising ordinary care for his own safety, then your verdict will be in favor of the plaintiff."

The defendant in answer to the charge of error contends that the plaintiff made no case that should have ever been submitted to the jury, and contends that the trial court should have given the instruction asked by it in the nature of a demurrer to the evidence. The defendant does not seriously contend that if there was a case made by the plaintiff that the instruction complained of by the plaintiff does not contain error, but relies upon the broad ground that no case having been made there could be no reversible error in the instruction. This necessitates a statement of the facts

of the case as told by the plaintiff, who was the only witness for plaintiff. Viewing such testimony in its most favorable light, and for the purpose of this appeal taking as true that which the plaintiff testified to.

It appears that the defendant operated a car barn at Webb City, Missouri, which is divided into stalls or sections; these stalls are 196 feet long and 27 feet wide, throughout the lengh of which are run two tracks upon which the street cars owned by the company are run for the purpose of cleaning, repairing and working on while in the barns. Between these tracks there is a pit run practically the full length of the barn, which pit is about 4 feet wide and 4 feet deep, placed under the tracks for the purpose of permitting the workmen and cleaners to work on the wheels and machinery when necessary to go under the cars. The stall lies east and west, and the car entrance to this stall is on the west. The tracks run back to within about ten feet of the back or east end. The pit commences near the west end or entrance end and runs the full length of the track. Artificial lights are provided in the stall, hung or stationed along through it for the purpose of lighting it up. The natural light enters this stall from the west or entrance end, which when the doors are open, as they were on the day plaintiff was injured, makes an opening or space of about 26 feet wide by 16 feet high. On the east end, directly back or opposite the end of each track are double windows which permit light to come in from the east end. There are no natural side lights or windows. On the day plaintiff was injured he entered the stall from the east end and was told by the man under whom he was working for the defendant, another car cleaner, to clean up a car which was located at the extreme east end of the building. It appears that there were no other cars on this track that morning.

The plaintiff testified that he was 69 or 70 years of age, that his eye-sight was good, and that on the morning of May 17, 1918, was the beginning of the

second day he began to work for the defendant company, having worked there in that stall cleaning cars all the day before. He testified that when he went to work he was told by his foreman to put the trolley of the car on the wire so that it would light up the car, and further testified that the electric lights throughout the stall, which were 16-candle-power incandescent lights, three in number, in a row, stationed every 14 ft. apart throughout the stall, were not lighted up. He further testified that on the day before these lights were lighted while he worked in the barn. He says that it was dark where he was working on this car, to such an extent that he could not see the rope that held the trolley; that he was reaching and feeling for this rope when he stepped into the pit which was under the track and was injured. The place where he stepped into this pit was at the west end of the car, which, as stated before, was stationed at the extreme east end of the track. The car, therefore, was between where he was and the windows which permitted the natural light to come into the stall from the east end thereof, he being the full length of the car and about 10 ft. from the east or back end of the stall and being probably 150 to 165 feet from the west or entrance end of the stall, where the doors were located.

On the question of whether plaintiff made out a case under the allegation of failure to properly light, we turn to plaintiff's testimony and find that he says: "The lights were not burning in the barn. They were not burning that morning when I started to work. It was dark in the barn. I did not know this pit was there along underneath the cars, they were covered up and I was busy working (which had reference to the day before he was injured). I was working on the side and never had any occasion to pay any attention to it. This pit was covered up when the cars were on the track. I did not know there was a pit under this track or between the tracks at the place I fell in before the accident happened. There was no light there. The

only light was what was in front, the east end of the barn. There was no light back at the west end of the barn. If there had been a light I could have seen the pit that morning.'' In referring to the pit, he said: ''I don't know how far from the east end it commenced. The car was run up until I couldn't see no pit that morning and the day before I didn't see any pit at the east end. I might have seen the pit along under the car, but didn't pay any attention. I don't know how many cars were in there that day. The barn was about full. I don't know how many cars one of these tracks held in the barn. I don't know how many cars I cleaned the first day, I forget now.'' He testified that this was the first car he had attempted to light up, and that that part of the business had been attended to by the man he was working under the day before. He was injured between seven and seven-thirty o'clock in the morning, and the day was a bright, sun-shiny day, and the day before he was injured was also a bright, sun-shiny day. ''When I went around to put this trolley on the car, I reached for the trolley rope. I came down the side of the car and stepped around and reached up for the cord. I reached with my right hand. I was on the south side facing the car. It was on my right side. I reached with my right hand. When I reached for the cord I was facing the east. I did not have hold of anything with my left hand. Coming around the car and reaching for the cord, my face would really be north. I was facing the north and not the east. I felt along the side of the car, or the back end of it. I did that because it was so dark. The day-light wasn't sufficient for me to see. I thought I could reach the cord from where I was. I wasn't paying any attention to whether there was one there or not. I was paying no attention to what was underneath my feet or what the situation was there. I found the pit out this morning of the 17th. When I couldn't reach the rope I just stepped over further.'' He further testified that after he was down in the pit he looked

down it toward the door and saw a little ladder. After he got out of the pit he went back to the car, and testified that the lights came on in the stall.

If this testimony be taken as true, it shows that the defendant maintained artificial lights in this stall; that on the day before, when it was a clear day, they were lighted; that on this day when plaintiff was hurt, which was a clear day, they were not lighted. That at the place where they put him to work there was a pit 4 feet wide and 4 feet deep at the immediate west end of the car, and that it was so dark he could not see the pit, and in reaching for the trolley rope, which he could not see, he stepped into this open pit and was injured.

Under the decisions of this State there can be no doubt on the question of negligence in failing to provide sufficient lights at the place they put the plaintiff to work. It is held in the very recent case of Baldwin v. Hanley, et al., 216 S. W. 998, that where artificial light is necessary to render safe the place where the servant is required to work, the failure of the master to exercise ordinary care to provide such light renders him liable for consequent injuries. [See also DeLate v. Loose-Wiles Biscuit Co., 213 S. W. 885; Wright v. Hammond Packing Co., 199 S. W. 754; Yost v. Atlas Portland Cement Co., 191 Mo. App. 422, 177 S. W. 690.].

It is the settled law of this State now that a servant does not assume a risk occasioned by a negligent act of his master. If a master has been negligent and the servant is aware of it, his conduct in continuing to work is an element to be considered only on questions of contributory negligence, which is always a question of fact for a jury except in cases where the danger rendered by the known negligence is so obvious and appalling that no ordinarily prudent man would have continued in the service, and before a court can declare such a condition it must be so apparently negligent for him to continue work that reasonable minds do not

differ upon it. [See cases heretofore cited and the leading case of Patrum v. Railroad, 259 Mo. 109, 168 S. W. 622.]

Mere knowledge on the part of the servant of the master's negligence does not render him guilty of contributory negligence as a matter of law, but is a fact to be taken into consideration by the jury in determining whether the plaintiff conducted himself, under the circumstances and surrounding conditions, as a reasonably prudent man would have acted. [See DeLate v. Loose-Wiles Biscuit Co., 213 S. W. 885; Wright v. Hammond Packing Co., 199 S. W. 754; Yost v. Atlas Portland Cement Co., 191 Mo. App. 422, 177 S. W. 690; Garner v. Bridge Company, 194 S. W. 1. c. 85; Henderson v. Stove Works, 197 S. W. 177; Bliesner v. Distilling Co., 174 Mo. App. 139, 157 S. W. 980; Hosheit v. Lusk et al., 190 Mo. App. 431, 177 S. W. 712.]

Holding as we do, that the plaintiff's evidence makes out an action of negligence against defendant, we now come to the question raised by appellant on the modification of his instruction made on the court's own motion. The effect of this instruction, as the court gave it, was that before the jury could find for plaintiff, although they should find the premises declared in the instruction as requested by the plaintiff, they must find that the plaintiff did not know that the pit was there. It has the same effect as declaring, as a matter of law, that the plaintiff did know that the pit was there, then regardless of all else there could be no recovery by him under the facts of this case. It required a finding for the plaintiff which was not a necessary finding for his recovery. This modification and the instructions given by the court at the request of the defendant shows that the theory upon which the trial court submitted this case was that if plaintiff knew that there was a pit under the car about which he was working, and knew that the defendant had failed in a duty to furnish lights, and in working

about the car fell into the pit, he was guilty of contributory negligence in law, such as would bar a recovery. This, we are unwilling to agree to. As we view the case the most the defendant was entitled to on the question of contributory negligence was that the jury say whether his conduct with his knowledge of the conditions that prevailed was such as conforms to that which would have been used by a reasonably prudent man under the same circumstances, and we, therefore, hold that the court erred in modifying the instruction and should have given it as presented by the plaintiff; and that the defendant's instructions on the question of contributory negligence should have left it open for the jury to say whether plaintiff's conduct under the circumstances and with the knowledge they might find that he had concerning the conditions, amounted to negligence on his part.

The doctrine of assumption of risk, as the matter presents itself to us, has no place in this case. The sole questions for determination are, first, was the defendant guilty of negligence under all the facts; and second, if the jury find that the defendant was negligent, then under all the facts was the plaintiff negligent? The answer of these two issues by the jury will solve this law-suit.

For the error heretofore pointed out in the instructions, the judgment is reversed and the cause remanded.

*Strugis, P. J.,* and *Bradley, J.,* concur.