NICHOLDS v. CRYSTAL PLATE GLASS COMPANY, *Appellant.*

In Banc, December 22, 1894.

1. **Master and Servant:** MACHINERY: REASONABLE CARE. The master in procuring machinery and appliances for his servants must use reasonable care and precaution to see that they are safe and fit for the designed use; and he must use like care and precaution to see that they are kept in good order and condition.

Nicholds v. Plate Glass Co.

2. ———: ———: ———. Where the master does not know of the defect in such machinery and appliances, and reasonable care on his part would not have disclosed it, he is not liable for injury to his servant resulting therefrom; but if reasonable care would have disclosed such defect, he is liable though it was not known to him.

3. ———: ———: ———. The fact that the master and the servant have equal opportunities to discover the defect will not defeat a recovery by the servant if the defect was unknown to the servant and the ordinary and careful use of the machine or appliance would not have revealed the defect; and this is true for the reason that it is not the duty of the servant to look out for defects, save such as are open to his observation in the ordinary use of the machine or appliance.

4. **Negligence**: MASTER AND SERVANT: DEFECTIVE APPLIANCE. Plaintiff, a foreman of defendant's blacksmith shop, was furnished by the foreman of defendant's machine shop, in compliance with the direction of the master mechanic, with a crane to which was attached an endless chain through which one end of heavy bars was placed while being hammered on an anvil. While plaintiff was holding a heavy bar in place on the anvil a defective link in the chain broke and the bar fell and injured him. *Held,* it appearing that the chain was defective, and that the defect could have been discovered on an examination by a competent person, and it appearing further that no such examination was ever made, and that it was not plaintiff's duty to inspect the chain, defendant was liable.

5. ———: ———: ———: QUESTION FOR JURY. Whether plaintiff was required to look for defects other than those open to his observation while in the prudent use of the appliances furnished, and whether plaintiff was negligent in attempting to handle a large shaft of iron by the use of the crane and in standing close to the shaft when it fell, were questions for the jury.

6. ———: ———: ———: FOREMAN. A foreman of a blacksmith shop does not assume risks resulting from the failure of the master to use reasonable care in providing and keeping in repair the appliances furnished for use in the shop.

7. ———: ———: ———: ———. The fact that a foreman of a blacksmith shop had charge of various jobs of work and had control of his helpers will not prevent him from recovering for injuries sustained by reason of defective appliances provided for use, in the absence of proof that it was his duty to keep the appliances in repair.

8. ———: ———: ———: DAMAGES: EXCESSIVE VERDICT: REMITTITUR. The evidence in this case, on the amount of the damages, examined and, *held,* that a verdict for $8,666 was excessive, and also ordered that on remittitur by plaintiff of $3,666 the judgment should be affirmed for the sum of $5,000. (*Burdict v. Railroad, 123 Mo. 221, affirmed.*) BARCLAY, GANTT and SHERWOOD, JJ., dissent.

Nicholds v. Plate Glass Co.

*Appeal from Iron Circuit Court.*—HON. JAMES D. FOX, Judge.

AFFIRMED.

*E. T. & C. B. Allen* for appellant.

(1) Omission to have inspected the chain which broke was not negligence on the part of the defendant under the circumstances of this case. *Cregan v. Marston,* 126 N. Y. 568; *Griffiths v. Railroad,* 28 N. Y. Supp. 75; *Davis v. Company,* 76 Hun, 289; Beven's Principles of the Law of Negligence, 322; *French v. Aulis,* 25 N. Y. Supp. 188; *Atlas Engine Works v. Randall,* 100 Ind. 293; *Richards v. Rough,* 53 Mich. 212; *Morgan v. Iron Co.,* 133 N. Y. 666; *Gibson v. Railroad,* 46 Mo. 169; *Corey v. Railroad,* 86 Mo. 643; *Reber v. Tower,* 11 Mo. App. 204; Bailey's Master's Liability for Injuries to Servants, 169. (2) But if omission to have inspected the chain which broke was negligence on the part of defendant, plaintiff can not recover, because knowing of such omission he made use of the chain. *Railroad v. Minnick,* 61 Fed. Rep. 635; *Railroad v. Drake,* 35 Pac. Rep. (Kan.) 825, and cases cited; *Lord v. Railroad,* 12 Col. 394; *Leary v. Railroad,* 139 Mass. 580; *Sullivan v. India Mfg. Co.,* 113 Mass. 398; *Ladd v. Railroad,* 119 Mass. 350; *Railroad v. Watson,* 114 Ind. 20; *Smith v. Sellars,* 40 La. Ann. 527; *Bengston v. Railroad,* 47 Minn. 486; *Hughes v. Railroad,* 27 Minn. 137; *Sherman v. Railroad,* 34 Minn. 259; *Perigo v. Railroad,* 52 Iowa, 276; *Wells v. Railroad,* 56 Iowa, 524; *McKee v. Railroad,* 13 L. R. A. (Iowa) 817; *Railroad v. Barber,* 5 Ohio St. 564. (3) The court below erred in refusing defendant's instruction 12 and in presenting as part of its own

instruction the contrary proposition. *Roddy v. Railroad*, 104 Mo. 243; *Price v. Railroad*, 77 Mo. 510; *Thomas v. Railroad*, 109 Mo. 198; *Boettger v. Iron Co.*, 27 S. W. Rep. 466; *Hogan v. Field*, 51 N. Y. Sup. Ct. 72; *Stroble v. Railroad*, 70 Iowa, 555; *Week v. Mill Co.*, 3 Wash. St. 629; *Schulz v. Johnson*, 35 Pac. Rep. 130. (4) The court below erred in refusing defendant's instructions numbers 4, 5, 6, 7, 8, and 10. *English v. Railroad*, 24 Fed. Rep. 208; *Railroad v. Burnes*, 36 N. E. Rep. (Ind.) 1092; *Murphy v. Greeley*, 146 Mass. 196; *Railroad v. McCarthey*, 64 Tex. 632; *Hulet v. Railroad*, 67 Mo. 239. The neglect of defendant (if any there was), was not the proximate cause of the injury complained of. *Henry v. Railroad*, 76 Mo. 288. (5) The chain link produced in evidence could not have been a part of the chain which broke. Haswell's Mechanics' and Engineers' Pocket Book [56 Ed. 1891], 135, 231, 784; Trautwein's Civil Engineer's Pocket Book [14 Ed. 1891], 414; *Hunter v. Railroad*, 6 L. R. A. 246. (6) The decision rendered in this case by division number one should not be followed. Cases cited under point 3; cases cited under point 4; *Davis v. Elevating Co.*, 76 Hun, 298; *McKinnon v. Norcross*, 3 L. R. A. 320; *Cregan v. Marston*, 126 N. Y. 568; *Covey v. Railroad*, 86 Mo. 643. It was substantially overruled by the later case of *Boettger v. Iron Co.*, 27 S. W. Rep. (Mo.) 466. It is not in accord with the following cases: *Henry v. Railroad*, 109 Mo. 493; *Steffen v. Meyer*, 96 Mo. 423; *Maher v. Railroad*, 64 Mo. 267; *Zimmerman v. Railroad*, 71 Mo. 476; *Maloy v. Railroad*, 84 Mo. 270; *Purl v. Railroad*, 72 Mo. 168; *Yarnall v. Railroad*, 75 Mo. 575; *Powell v. Railroad*, 76 Mo. 80; *Hudson v. Railroad*, 101 Mo. 13; *Corcoran v. Railroad*, 105 Mo. 399; *Weber v. Railroad*, 100 Mo. 194; *Haynes v. Railroad*, 108 Mo. 123.

*C. P. & J. D. Johnson* for respondent.

The decision of the case by the majority of division number one of this court on all points raised before it, except as to the measure of damages, was correct. The verdict is not, under the facts and circumstances of the case, excessive. *Porter v. Railroad*, 71 Mo. 66; *Waldheier v. Railroad*, 87 Mo. 37; *Dougherty v. Railroad*, 97 Mo. 666. And the court will consider the previous verdict of $15,000, in determining whether or not the verdict is excessive. *Stephens v. Railroad*, 96 Mo. 215; *Whalen v. Railroad*, 60 Mo. 329; *Klutts v. Railroad*, 75 Mo. 649; *Fry v. Railroad*, 73 Mo. 129; *Furnish v. Railroad*, 102 Mo. 455. There being no error of law, or misconduct of the jury in the record, the defendant is not entitled to a second new trial. R. S. 1889, sec. 2241; *Oldham v. Henderson*, 4 Mo. 295; *Hill v. Deaver*, 7 Mo. 58; *Boyce v. Smith*, 16 Mo. 321; *Waldheier v. Railroad*, 71 Mo. 514; *State ex rel. v. Adams*, 76 Mo. 605; *Gregory v. Chambers*, 78 Mo. 294; *Pritchard v. Hewitt*, 91 Mo. 547; *Smith v. Railroad*, 92 Mo. 359; *Furnish v. Railroad*, 102 Mo. 438; *Gurley v. Railroad*, 104 Mo. 233; *Boggess v. Railroad*, 118 Mo. 328; *Burdict v. Railroad* 123 Mo. 221.

## DIVISION ONE.

BLACK, P. J.—This is a personal damage suit in which the plaintiff obtained a verdict and judgment, from which the defendant appealed. The principal alleged errors are: *First.* There is no evidence of negligence on the part of the defendant. *Second.* The plaintiff was guilty of contributory negligence, and the court should have so declared as a matter of law. *Third.* The injury was caused by one of those risks which the plaintiff assumed. *Fourth.*

Plaintiff ought not to recover because he was defendant's vice-principal. *Fifth.* Errors in giving and refusing to give instructions. *Sixth.* The damages are excessive.

The defendant is a corporation engaged in carrying on extensive glass works. In connection with the works, and as a part thereof, the defendant maintains a machine shop and a blacksmith shop. At and prior to the time of the accident in question, there were two forges in the blacksmith shop, one in charge of Witchell who had one helper, and the other in charge of the plaintiff who had three, and sometimes four, helpers. The difficult jobs of work were sent to the plaintiff. It was his business to dress the pot tongs. They were heavy and it seems he complained that he could not handle them. This was about eighteen months before the accident now in question. He asked the then master mechanic to have an iron crane placed at his forge. The iron crane was not furnished. But the master mechanic directed the boss carpenter to erect a wooden one. After the crane had been erected the plaintiff called on the master mechanic for a pair of chain blocks, who said he could not go to that expense. He at the same time told the plaintiff to go to Davis, foreman of the machine shop, and Davis would give him a chain. He saw Davis, who got a chain and sheave and threw them down on the blacksmith shop floor, saying to plaintiff: "Use that, that is what we have used for a sling chain." The chain was composed of some twenty or more links and worked in the sheave, to which there was attached a hook and swivel. The hook was then attached to another apparatus which extended up to the traveler on the top of the boom of the crane. The crane thus rigged was used for various kinds of work during the eighteen months.

On the day of the accident, Mr. Prentice, foreman

of the machine shop, directed plaintiff to make some dies for the trip hammer out of a steel which was five inches in diameter and some eighteen feet long. The plaintiff and his helpers rolled the shaft up to the forge, heated it and cut it in two. They then began work on one half, which was some six or eight feet long. One end rested in the chain before described, and the helpers carried the other end from the forge to the anvil. At the time of the accident one end rested in the chain and the other on the anvil. The plaintiff occupied a position about midway between the anvil and the chain, and was moving the shaft by the aid of a clamp, and at the same time gave the helpers directions where to apply their sledges. Whilst in this position one link of the chain broke, and the shaft fell upon the plaintiff's ankle, inflicting the injuries of which he complains.

The substantial averments of the amended petition are that the chain broke, because the links had become "fractured, corroded and impaired in strength by use, exposure and time," and by reason thereof the chain "was insufficient in strength for the purposes for which it was then and there being used;" that defendant knew or by the exercise of ordinary care might have known the "fractured, corroded and impaired condition and insufficiency in strength of said link, but nevertheless negligently failed to remove or repair the same, or replace it with a safe and sound link." The answer denies negligence on the part of the defendant and avers that plaintiff "was in charge and had full control over the workshop in which he worked, and all the tools and appliances thereof including the crane and chain mentioned in said amended petition; that the plaintiff negligently selected the said chain and crane for use in the work he was employed, and negligently used the same; that such negligence of the plaintiff

directly contributed to any injury sustained by him."

The evidence shows that the broken link had an old corroded crack in it at the place where it broke, extending more than half way through the iron. Plaintiff testified that when Davis gave him the chain, which was eighteen months before the accident, it was in the sheaves, was greasy and had been used by the smoothers, the grinders and polishers; that it had been used in many places about the works and was an old chain. He says the chain looked well enough to him, though he never examined it until after the accident; that he never received any orders from the master mechanic or from the foreman of the machine shop to inspect it; and that it was not his duty to inspect it or any of the machinery. He, however, did keep his own tools in repair. He says he did not know much about chains, but that this defect could have been easily detected by a competent inspector. His cross-examination tends strongly to show that he was as competent to inspect the chain as any one could be. Indeed he says he thinks he would have thrown the whole chain away as unfit for use had he examined it just before the accident. He says, before swinging the eighteen foot iron shaft around from the forge to the anvil to cut in two, he caused a bar to be placed from the forge to the anvil; that he did this because the shaft was so heavy he was afraid the whole crane might give way; that this bar was not used after the shaft had been cut in two; that this was the heaviest piece of metal he had ever handled with the crane; and that he supposes trusses could have been used instead of the crane.

It appears from the testimony of the witnesses called by the defendant that cranes with chains were used in the casting hall, and that they were inspected by a man employed for that purpose, but it does not appear that this person ever inspected the crane in the

blacksmith shop.   The evidence of Prentice, foreman of the machine shop, is that he caused machinery to be repaired when reported to him as out of order; that he often gave plaintiff orders for work.   Prentice occupied a position subordinate to Seddin, the master mechanic. Seddin testified, on cross-examination, that it was his duty to exercise a general supervision over all the machinery in the factory, including the machine shop and the blacksmith shop and the foundry, and to see that it was kept in repair, and that the plaintiff was subordinate to him.   He says he never gave the plaintiff any instructions as to what his duties were, and never directed him or any other person to inspect the crane in the blacksmith shop.  He saw it and the chain, but did not see or know of any defect.   Prentice was present when the shaft was cut in two, and aided in that work.   Indeed, he directed the plaintiff to make the dies out of this particular shaft.

The court, of its own motion, gave the following instructions:

"If you believe said link broke by reason of its having become fractured, corroded and impaired by exposure and time, after it was provided by the defendant as aforesaid, that defendant knew, or by the exercise of reasonable care might have known, of the alleged defects in said link, and that plaintiff was not guilty of negligence in handling the shaft, but was at the time exercising reasonable care and prudence in handling the same, then you should find a verdict for the plaintiff; unless you should further find and believe from the evidence that the plaintiff knew of the defects in said link, or by the exercise of reasonable care might have known of them.

"Unless plaintiff was employed by defendant as foreman of its blacksmith shop and was given the supervision of the same, together with the appliances

therein, and it was his duty by virtue of his employment as foreman of said shop according to the regulations and course of business of defendant to see that all the tools and appliances were kept in repair or report all needed repairs to his superiors, he would not be required to inspect said chain for the purpose of discovering any such defects or impairments which might be therein, not observable by a reasonable, careful, prudent man while using or handling the same.

"You are also instructed that, if you believe and find from the testimony in this cause that plaintiff was employed by defendant as foreman of its blacksmith shop, and that plaintiff asked defendant to erect in his shop the said crane, and that plaintiff was given the supervision of said shop, and that it was his duty by virtue of his employment as foreman of said shop, according to the regulations and course of business of defendant, to see that all the tools and appliances used by him in his shop were kept in repair or report the same when out of repairs to his superiors, the plaintiff can not recover. Or, if you should find from the evidence, that the crane was not furnished by the defendant to be used in the handling of as heavy a piece of metal as the steel shaft mentioned in the evidence, and that plaintiff, knowing this, negligently put said shaft in the chain attachment to said crane, by which the chain was broken, then, and in that event, plaintiff can not recover in this action."

1. The master in procuring machinery and appliances must use reasonable care and precaution to see that they are safe and fit for the designed use; and he must use like care and precaution to see that they are kept in good order and condition. If the master does not know of the defect, and reasonable care on his part would not have disclosed it, he is not liable; but if reasonable care would have disclosed it, then he is liable,

though it was not known to him.  *Porter v. Railroad,* 71 Mo. 71; *Bowen v. Railroad,* 95 Mo. 276.  The fact that the master and the servant have equal opportunities to discover the defect will not defeat a recovery by the servant, if the defect was unknown to the servant and the ordinary and careful use of the machine or appliance would not have revealed the defect; and this, for the reason that it is not the duty of the servant to look out for defects; save such as are open to his observation in the ordinary use of the machine or appliance.  *Gutridge v. Railroad,* 105 Mo. 526; *O'Mellia v. Railroad,* 115 Mo. 217.

Now, there is much evidence tending to show that this chain was old, cracked and unfit for use at the forge.  There is also evidence tending to show that the defect was one which would not be discovered by simply using it, but that it could and would have been discovered by an examination made by a competent person, and that no such examination was ever made. The case was, therefore, one for the application of the principles of law before stated, and they are set forth in the instructions given.  Cases are cited where servants have been held bound to see that instruments placed in their hands are fit for use, and the principle may be correct, as applied to simple instruments or tools, like a spade, hoe, hammer or sledge; but we think this crane, with its various appliances, presents a very different case.

But it is said that it was the duty of the plaintiff to inspect the chain for the purpose of discovering defects, if any there were.  If it was his duty to inspect it, he ought not to recover, for in that event the injury was the result of his own negligence.  Whether he was bound to look for defects, other than those open to his observation in the prudent use of the appliance, was a

question of fact, and was properly submitted to the jury. Surely we can not say, as a matter of law, that it was the duty of the plaintiff to inspect the chain; if it was, it was also his duty to inspect each and every part of the crane. The question whether the plaintiff should have examined the chain, for defects not observable in the prudent use of it, was one for the jury.

It is earnestly argued that plaintiff was negligent in attempting to handle so large a shaft by the use of the crane, and that he was negligent in standing so close to the shaft, It is no doubt true that he could have discarded the crane in the instance in question, and used trusses, but it does not follow that he was, as a matter of law, guilty of negligence in using it. The question whether he was guilty of negligence in using this crane on the occasion in question or in standing close to the shaft were questions of fact for the consideration of the jury.

The questions of negligence on the part of the defendant and of contributory negligence on the part of the plaintiff were fully and properly stated in the instructions given, so that we need not stop to consider the refused instructions.

2. The further contention, that the injury was caused by one of those risks assumed by the defendant when he entered the employment of the defendant, can not be sustained. The risks assumed by servants do not include those which arise from the failure of the master to perform duties which are personal to him, and it is the personal duty of the master to use due and reasonable care in providing appliances and in keeping them in repair and fit for use. *Henry v. Railroad*, 109 Mo. 493.

3. There is no doubt but the plaintiff was the foreman of the blacksmith shop, and as such had charge of the various jobs of work sent to him. He also had con-

trol of his helpers. Though a foreman, and to a limited extent the defendant's vice-principal, still he was the servant of the defendant. The fact that he was such foreman does not defeat his action to recover for injuries sustained by reason of defective appliances, unless it was his duty to see that the appliances were kept in order, and we have seen that this was a question of fact in this case and not one of law.

4.   The evidence bearing upon the objection that the damages are excessive is to the following effect: On the first trial plaintiff recovered judgment for $15,000.   At the trial now under review, it being the second one, the plaintiff obtained a verdict and judgment in the sum of $8,666.   According to plaintiff's evidence, the bones of his ankle were broken; he was confined to his house three or four weeks; after that, he used crutches for five or six months; he then, and down to the date of the last trial, used an apparatus consisting of iron braces and a cork bottom shoe.   At the time of the accident he was earning from $75 to $90 per month.   He lost seven or eight months' time.   At the expiration of that time he began work at another place and earned from $30 to $40 per month; and at the date of the last trial he was earning $2.70 per day, and as much as $18 per week when he worked extra time.   Dr. Cristoff examined the ankle while plaintiff was yet on crutches.   He found a fracture of the inside bone and the foot turned outward.   Dr. Carson examined the plaintiff shortly before the last trial.   He says he found a thickening of one bone, but he was unable to say whether it had been fractured; says the bones were all in proper place.   He found indications of a bruise, and the foot was drawn in by muscular contraction, so that less than half of the sole of the foot rested on the floor.   He says the injury impairs the

strength of the leg, and the chances are that the injury is permanent.

From this evidence it appears the strength of the plaintiff's leg is in all probability permanently impaired, but he has not lost the use of it, and he appears to be able to earn as much as he did before the accident. It does not appear that he incurred any expenses in and about being cured. He was attended by the defendant's physician. We can not escape the conclusion that the judgment for $8,666 is excessive. Counsel for the defendant insist that the judgment should be reversed, though the plaintiff may be willing to remit the excess. To this proposition we do not agree. That the court has the power to say a given verdict is excessive is conceded on all hands, and if it has such power, it can say what amount will not be excessive. Aside from the excessive damages, there is no error in the record, nor is there anything in the record tending to show that the finding for the plaintiff was in any way brought about by prejudice or passion on the part of the jury. Under these circumstances this court will indicate an amount which, in its judgment, will not be excessive, and allow the plaintiff to take an affirmance for that amount, or submit to a reversal of the judgment and remanding of the cause as he may elect. *Burdict v. Railroad*, 123 Mo. 221. If the plaintiff shall remit $3,666 within twenty days from this date the judgment will be affirmed for the residue, otherwise the judgment will be reversed and cause remanded. The costs of this appeal will be taxed against the respondent. All concur, except BARCLAY, J., who dissents.

IN BANC.

BLACK, C. J.—The foregoing opinion is approved by court in banc. All concur, except BARCLAY, GANTT

and SHERWOOD, JJ., who dissent as to the fourth para-
graph. The plaintiff may remit within thirty days
after this date.