CHARLES C. DIXON v. FRAZIER-DAVIS CONSTRUCTION COMPANY, Appellant.—298 S'. W. 827.

Division Two, October 10, 1927.

*Jourdan & English* for appellant.

54

*Foristel, Mudd, Blair & Habenicht* for respondent.

DAVIS, C.—This is an action for personal injuries by the servant against the master, based on various acts of negligence relative to the falling of a bracket, attached to the girder of a viaduct then in the course of being demolished, the horizontal arm of which became detached as the result of disintegration and on which arm plaintiff sat while dissevering the oblique or lower arm with an acetylene torch, whereby he was caused to fall to the ground thirty feet below. The jury returned a verdict for $10,000 in plaintiff's favor, defendant appealing from the judgment entered thereon.

The petition alleges in substance that defendant was engaged in wrecking and tearing down a structure in the city of St. Louis, known as the Fourteenth Street Viaduct; that plaintiff was an employee of defendant; that while working as such employee on a bracket, the bracket became detached from the girder of said viaduct, so that it fell with plaintiff on it to the ground below, greatly injuring him. The petition comprises six specifications of negligence: (1) Negligently failing to use ordinary care to furnish plaintiff a reasonably safe place in which to work, in that plaintiff was suffered to work on the horizontal upper arm of the bracket, and that the bracket, at its point of connection with the girder, and the girder were old, weak and rusty and likely to collapse and fall with persons working on it and negligently failed to fasten the bracket or furnish a scaffold or other place to stand, and that said place of work was not reasonably safe and was dangerous, all of which defendant knew or by the exercise of ordinary care could have known; (2) defendant negligently directed plaintiff to work on the bracket when it knew or by the exercise of ordinary care could have known of the defect; (3)

defendant negligently assured plaintiff of the safety of the bracket as a place to work; (4) defendant negligently failed to inspect the bracket before plaintiff was required to work on it; (5) defendant negligently failed to warn plaintiff against the danger of working on the bracket; (6) defendant negligently failed to adopt a reasonably safe method of doing the work.

The answer was a general denial and a plea of contributory negligence to the effect that plaintiff negligently failed to look, watch and pay attention to his own safety; negligently caused, suffered and permitted a bracket to be loosened and detached from a girder while he was resting his weight thereon.

Plaintiff's reply to defendant's answer was a general denial.

The history of the case develops that defendant, on June 22, 1923, the day of the occurrence, was engaged in wrecking and tearing down a structure in the city of St. Louis, known as the Fourteenth Street Viaduct, over the Mill Creek Valley, which bridged a network of railroad tracks leading to and from Union Station. Plaintiff was an experienced bridge and structural iron-worker, having followed that line of work for twelve years.

The bridge was being demolished, it seems, because a train had left the tracks, colliding with one of the center piers on which the bridge rested, causing the central portion to collapse, and the bridge to become so shaken that it was thought that its condition if restored would probably be dangerous.

The structure consisted of steel beams, girders, columns and brackets. Running north and south, carrying the main roadway of the bridge, were large I-beams or girders, to which were attached, at intervals of fourteen feet, brackets three feet in length, which had carried the sidewalks. These brackets were fastened to the main girders by rivets, the horizontal arm of which extended therefrom at right angles. The brackets were triangular in form, consisting of three arms, horizontal, oblique and vertical, the latter lying flush against the girder, with the oblique arm running from the outer end of the horizontal arm to the lower end of the vertical. The inner portion of the triangle was made up of steel webbing. The arms were three to four feet long, about three inches wide and three-fourths of an inch thick.

The bridge was owned by the city of St. Louis, the defendant wrecking it as contractor. The taking down of the north end had been completed prior to the accident, the south portion then being in the course of demolishment. All material, comprising the sidewalks, had been taken up and removed, saving these brackets, which were being burned off with an acetylene torch.

Plaintiff's advent to the work resulted from defendant's superintendent communicating with the local union of Bridge and Structural Iron Workers, which sent six men to the work, among whom were

plaintiff, witness Sargent, plaintiff's helper, and Sargent's father, termed a pusher. The evidence failed to further mention or individuate the work of the three other men. On coming to the work plaintiff designated himself "the burner." Plaintiff and the superintendent conferred and advised relative to the work. Tools and apparatus were provided, and, in addition to other work, plaintiff proceeded to burn off the brackets. He had theretofore burned eight or ten brackets before the fall occurred. Plaintiff, following the procedure used in burning the other brackets, with the visual knowledge of defendant's superintendent as to the course pursued as to the other brackets, went upon the bracket that fell with him, sat astride it facing the girder, with his legs entwined to keep from falling, adjusted his goggles, and then by means of the acetylene torch, burned off the oblique or lower arm of the bracket at or near its connection with the girder, between himself and the bridge. It seems that the horizontal arm of the bracket had through rust and disintegration become dissevered from the girder, and had been for such a length of time that paint theretofore applied had seeped down and covered the end of the bracket separated from the girder.

Defendant's superintendent admitted that he had seen plaintiff walk out on the upper or horizontal arms of the other brackets, straddle them, cross or lock his legs, lean forward upon the bracket with his head toward the girder and burn through the oblique or lower arm with the torch, while sitting upon the horizontal arm which supported his weight. Having severed the oblique arm, he would then arise and return to the girder, from which place he would burn loose the horizontal or upper arm of the bracket, thus causing it to fall to the ground. While astride the horizontal arm of a bracket, following the same course of procedure, the bracket fell with him thirty feet to the ground as he burned loose the lower arm, the upper arm having become theretofore dissevered from the girder. Plaintiff stated that the bracket that fell with him failed to vibrate, without an occurrence tending to arouse his suspicions with respect to danger. That the customary method of testing the stability of a bracket was to strike it at its point of contact with the girder, using a five- to eight-pound hammer, thus determining its tensile strength to hold the weight of the worker. That he had not seen defendant make any test. The superintendent of defendant stated that he made no hammer test, but that he had walked over the bridge, looking at the brackets and their contact with the girder, kicking them with his foot and walking out upon several of them to test vibration, without further or other inspection. The superintendent further stated that testing the bracket with a hammer, as suggested by plaintiff, would not reveal the separation of the horizontal arm of the bracket from the girder. Plaintiff stated that he did not inspect the bracket or test it with a hammer,

suggested by him as the customary method of testing its strength. Plaintiff's evidence tended to show that the usual and customary method of working, in burning loose the brackets, was to sit on the horizontal arm while burning loose the oblique arm. Defendant's evidence tended to show that it was optional with the workman to sit either on the horizontal arm or the girder while dissevering the oblique arm; but that it was the easier method to sit on the bracket, and that the bracket was not expected to fall upon the severance of the oblique arm. Other facts, if any, germane to the questions raised will be later noted.

I. The initial assignment of error charges the trial court with error in striking from the answer the plea that plaintiff assumed the risk as to obvious dangers, which were or by the exercise of ordinary care could have been known to him. It is apparent from the pronouncements of this court that a servant never assumes the risk of the master's negligence. Suffice it to say that no error was committed in that regard, for the risks which the servant assumes are those necessarily incident to the service, which may be shown in confutation of the master's negligence under a general denial. A discussion of the doctrine may be found in Curtis v. McNair, 173 Mo. 270, 73 S. W. 167; Patrum v. Railroad, 259 Mo. 109, 168 S. W. 622; Williamson v. Light & Power Co., 281 Mo. 544, 219 S. W. 902; Doody v. Woolen Mills Co., 274 S. W. 692. We think it unnecessary to expatiate the subject there developed and amplified.

II. The second assignment relates to the refusal of the trial court to give instructions to the jury in the nature of demurrers to the evidence. It is based, first, on the failure of the evidence to develop negligence on the part of defendant; and, second, on the assumption that the evidence develops that plaintiff was guilty of contributory negligence. We herewith treat the propositions advanced in order.

(a) In arguing that the evidence fails to develop negligence on the part of defendant, it is said that the master is not liable for injuries caused to the servant by dangers or defects in the place of work unless the master knew or by due diligence could have known of such dangers; that, as a corollary, it is also a fundamental rule that no liability is shown on the part of the master for failure to inspect the premises unless the evidence shows that such inspection would have prevented the injury. It is then argued that the bracket, so far as bearing the weight of plaintiff, was a safe place upon which to work when plaintiff went upon it, and that an inspection would have shown it then safe, as the bracket became unsafe only after plaintiff

had burned the oblique arm, which resulted, not from the act of the master, but from the act of the servant.

The question presented is whether the evidence tends to show that defendant failed to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work. It was the duty of defendant to look for latent dangers and defects, that is, dangers and defects not open to observation, as well as patent defects. As is said in Hayes v. Sheffield Ice Co., 221 S. W. 705, "the duty of inspection as to the master is affirmative, and must be continually fulfilled and positively performed." According to plaintiff's evidence the separation of the horizontal arm of the bracket from the girder could have been discovered by the exercise of ordinary care in noting vibration upon striking it with a hammer (which inspection defendant's evidence shows was not made), developing that an inspection would have discovered the defect and prevented the falling.

It is urged that plaintiff, as the result of his actions, made a safe place to work unsafe. The proximate cause of the injury was not the act of plaintiff in severing the oblique arm, but the precipitation was due to the failure of defendant to exercise ordinary care to make an inspection to determine whether the horizontal arm of this particular bracket was of sufficient strength to sustain the weight of plaintiff upon the dissevering of the oblique arm. This was demonstrated by the horizontal arm of the other brackets sustaining the weight of plaintiff as the oblique arms were burned loose. As each bracket on the structure constituted a separate place of work, the duty devolved on defendant to inspect each bracket. The situation is not analogous to the weakening of certain portions of a structure by the demolishment of contiguous or other portions, for the evidence tends to show that the wrecking of the bridge did not cause the disintegration and separation of the parts. Nor is the situation analogous to a state of facts where the danger or defect could not have been discovered by exercising ordinary care in making an inspection, for, although defendant's evidence tended to show that the danger could not at any time have been discovered by inspection until the severing of the oblique arm developed the condition, plaintiff's evidence tended to show that an inspection by the usual method, striking the bracket with a five- to eight-pound maul, would have developed the condition. The issue of defendant's negligence was for the jury.

(b) Was plaintiff guilty of contributory negligence? The duty to exercise ordinary care to furnish the servant a reasonably safe place in which to work is the primary and non-delegable duty of the master. This duty has been imposed upon the master for the protection of the servant, who has the right to rely upon its performance. The master must from time to time inspect the place of work to see that it is in a reasonably safe

condition and to so maintain it. However, if the servant knew or by the exercise of ordinary care could have known that the danger or defect was obvious, open, apparent, imminent and hazardous he could not rely upon the rule. And that the place of work is of unusual danger, does not affect the operation of the rule, for the servant may assume that it is as safe as the master can make it by the use of ordinary care and diligence, and that the master will not expose him to hidden or concealed dangers, without warning, discovered or discoverable by the use of ordinary care. [39 C. J. 827, par. 1040.]

Bearing in mind that materials comprising the sidewalk except the brackets had been removed and that disintegration of the parts had taken place, we cannot do better in amplifying the question than to quote from Hayes v. Sheffield Ice Co., 282 Mo. 446, 221 S. W. 705, reading:

"The defendant was required to look for defects, while the plaintiff was bound only to discover what would have been apparent to one of ordinary prudence. The defendant was held to know the defects, if by the exercise of care they could have been discovered. The plaintiff had the right to assume, especially in view of the defendant's assurances, that the latter's president had furnished him with a safe place to work, unless he could by the exercise of ordinary care have discovered the rotten beam which caused his injury, and which at the time was covered with sheeting, which formed a part of the roof. It appears, therefore, that the plaintiff and the defendant did not have an equal opportunity to discover the defect which caused the injury; but, if such equal opportunity had been afforded, this would not defeat plaintiff's right of recovery, for the reason that it was not his duty, although it was that of the defendant, to look for such defects as were not open to observation. The duty of inspection as to the master is affirmative, and must be continually fulfilled and positively performed."

The falling of the bracket did not result from its general liability to fall, but it fell because of its defective condition, which was discoverable by the exercise of ordinary care. Inasmuch, however, as the danger was not known to plaintiff, or obvious or apparent, he was under no duty to make an inspection as a matter of law, unless he was employed for that purpose.

In this regard, defendant maintains the evidence tends to show that the duty devolved on plaintiff to scrape off the paint and to inspect the place of work to determine its safety. It is true that defendant's parol evidence tends to show that it was plaintiff's duty to scrape off the paint and inspect the place of work, but we are unable to find that plaintiff's evidence so shows, except that plaintiff's witness, the helper, stated that paint and rust were scraped off the other brackets as well as this one, but we think the evidence may be interpreted as tending to show that this was done to more easily burn the bracket

loose and not for inspection purposes. It was then within the province of the jury, as triers of fact, to accept or disregard defendant's evidence to that effect, and, having by their verdict disregarded it, defendant's evidence, unless admitted to be true, may not be considered in determining the demurrer to the evidence.

We think plaintiff's evidence shows that he was an experienced mechanic in the line of work in which he was engaged. From this premise defendant argues, first, that plaintiff chose an unsafe place from which to work when a safe place was open to him; and, second, as an experienced mechanic, without knowledge of tests made by the master, and therefore without placing reliance on any test made by the master, it was his duty to test the place of work to determine its safety.

In arguing the first contention, defendant asserts that plaintiff could have burned the oblique arm by sitting on the girder and that by sitting on the horizontal arm, a more hazardous place from which to work, he assumed the risk and was guilty of contributory negligence. But it is evident that he neither assumed the risk nor was guilty of contributory negligence as a matter of law. It was the duty of the master to discover and warn the servant of the hidden danger, if by the exercise of ordinary care it could be done. Of course if the master does not know of the danger and if reasonable care would not have discovered it, the master is not liable. On the other hand, it is not the duty of the servant to search or look for defects, except as they are obvious or apparent, unless the servant's duties covered inspection. [Nicholds v. Plate Glass Co., 126 Mo. 55, 28 S. W. 991.] His place of work, sitting on the horizontal arms, before and after the burning of the oblique arms of the other brackets, was apparently safe. The danger or defect was unknown to the servant. According to plaintiff's evidence, no duty rested on him to inspect the bracket. The superintendent had observed plaintiff previously, a few times, burn off other brackets by using the same method of work, and no occurrence appears tending to show that the place and method of work were apparently dangerous. Even if we could say that plaintiff, in sitting on the horizontal arm to perform his work, chose a potentially hazardous place, yet the course of conduct of the defendant tended to show that defendant acquiesced in plaintiff's place of work on the brackets rather than the girder, thus permitting him to use his discretion with respect to a place of work not obviously hazardous with respect to a defect. [Hutchinson v. Richmond Safety Gate Co., 247 Mo. 71, 152 S. W. 52.]

Defendant's second contention relates to the assumption of risk and contributory negligence of plaintiff in that he worked upon the

62

bracket without inspecting it, knowing of no inspection made by defendant. The answer to this contention is found in 39 Corpus Juris, page 827, paragraph 1040, reading: ''A servant has the right to rely upon the performance by the master or his authorized agents of the duties imposed upon the master for the protection of his servants, to furnish suitable tools, appliances, reasonably safe places of work, etc., to inspect them from time to time, to see that they are in a reasonably safe condition, and to maintain them in that condition, unless the servant has actual knowledge to the contrary, or unless the danger of doing the work in the place or with the appliances furnished by the master is obvious and imminent.'' It is manifest that it was a jury question whether the defect was hidden. That the place where the servant was working was not constructed by the master was of no importance, for the place of work was furnished by the master, and, according to plaintiff's evidence, the defect was discoverable by the exercise of ordinary care of inspection, which duty of inspection devolved upon the master, not upon the servant, unless he was so employed. The case of Roberts v. Telephone Co., 166 Mo. 370, 66 S. W. 155, is not in point, for there the duty of inspection rested upon the servant, who was hired to search out defects for the purpose of repair. The negligence and contributory negligence of the parties, as well as the assumption of risk by plaintiff, were for the jury, resulting that the demurrer to the evidence was properly overruled.

III. Defendant complains of Instruction 2, given at the instance of plaintiff. The complaint is that the instruction authorized and empowered the jury to find that in the course of said work the plaintiff was ordered and directed by defendant to do certain work, as shown in the evidence, which in the ordinary course thereof required him to go upon and perform work upon a certain bracket extending out from a girder on said bridge. Instruction 1 also authorized and empowered the jury to find that as a part of said work the defendant ordered the plaintiff to work about and upon a certain bracket.

These two instructions authorized the jury to consider facts not covered by the evidence. The record comprises no evidence, either expressly or by implication, that defendant ordered or required plaintiff to take a position upon the bracket to do the work. The direction to him went no further than to cut it off, and the evidence develops that the work was capable of performance by sitting on the girder, although plaintiff's evidence discloses that the easier position from which to accomplish the purpose was to sit astride the bracket. The instructions are predicated on non-existent facts and are there-

fore broader than the evidence. In Albrecht v. Shultz Belting Co., 299 Mo. 12, 252 S. W. 400, it was said that evidence of an order was lacking and one issue related to taking another course to do the work which was safe. In Doody v. California Woolen Mills Co., 230 S. W. 377, the court ruled that an instruction predicated on facts of which there is no evidence is misleading and prejudicial. We think these instructions constitute error.

IV. The propriety of giving plaintiff's Instruction 3 is attacked. It is predicated on the contributory negligence of plaintiff. It tells the jury, first, that plaintiff was not bound to search for or to make a particular inspection of the place in which he was required to do such work to discover defects and dangers. We have previously said that it was a jury question whether plaintiff was negligent, included in which question was the duty of plaintiff to make an inspection. By this instruction the jury is precluded from considering the question of the duty of plaintiff to make an inspection. While the danger was not so obvious as to require the court to instruct the jury to find for defendant, yet the record contains evidence on the part of defendant that plaintiff was employed as an experienced burner and that among his duties was the testing the place of work to determine its safety. If this was plaintiff's duty, then plaintiff was negligent in failing to make the test, for the evidence shows that he understood the method of testing the place of work probably better than the superintendent who hired him. The instruction is erroneous in that regard. [Wilson v. United Rys. Co., 181 S. W. 19.] Again, the instruction is erroneous because it states that plaintiff was chargeable only with such knowledge of defects and dangers in the place at which he was at work as would come to him in the ordinary course of his work. If it was plaintiff's duty to inspect the place of work, and the evidence so tends to show, he was chargeable beyond the ground covered by the instruction.

Secondly, the instruction informs the jury that if they find and believe that plaintiff, as shown by the evidence, exercised such care for his own safety as a person of ordinary care and prudence would have exercised, if in his place and under the same or similar circumstances, then plaintiff was not guilty of negligence. We think the purport of this portion of the instruction assumes that the evidence shows that plaintiff exercised ordinary care and prudence for his own safety. While its meaning may be doubtful, yet it is easily capable of being so interpreted. The vital question in the case, as we view it, relates to the duty of inspection and the result of it. The aspects of the evidence

revolve around the questions of the ability or inability of defendant to discover the defect by the exercise of ordinary care, and the duty of inspecting the place of work cast on plaintiff. Therefore an instruction capable of being interpreted to mean that the evidence developed that plaintiff was not negligent in fact is error. [Ganey v. Kansas City, 259 Mo. 654, 168 S. W. 619; McMillan v. Bausch, 234 S. W. 835.]

Thirdly, the instruction tells the jury in effect that plaintiff was not guilty of negligence sufficient to defeat his right of recovery unless the condition of the bracket was obviously dangerous. This portion of the instruction deletes the right of the jury to consider the duty of plaintiff to make an inspection, cast upon him by defendant's evidence, even though the danger was not obvious. The instruction was erroneous.

V. While it is unnecessary to amplify other errors charged, inasmuch as they may not again occur, yet we suggest that counsel on a retrial refrain from injecting into the proceedings the question of liability insurance, as well as to refrain from statements and side remarks of at least doubtful propriety.

Because of the errors noted in the instructions, we reverse the judgment and remand the cause. *Higbee* and *Henwood, CC.*, concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.