Florence Took, Appellant, v. Rolla Wells, Receiver of United Railways Company of St. Louis.—53 S. W. (2d) 389.

Division Two, September 28, 1932.

*Bass & Bass* and *John Grossman* for appellant.

*T. E. Francis, B. G. Carpenter* and *Allen, Moser & Marsalek* for respondent.

WHITE, P. J.—The plaintiff was injured after alighting as a passenger from one of the street cars in charge of Rolla Wells, Receiver for the United Railways Company and the St. Louis Public Service Company. She was employed by the R. C. Can Company. June 3, 1927, she boarded a Taylor Avenue car at 6:55 A. M., to go to her place of business. She intended to transfer to a Broadway car at a place called ''The Loop.''

The car on which the plaintiff was riding came on the loop from the west and stopped at the point marked ''A,'' opposite the southwest

(The accompanying plat shows the situation.)

corner of the building marked "Office Building." She desired to change to a Broadway car which was stopped at the point "B," headed to the west. In front of the car on which the plaintiff had been riding were two other cars, one next the car from which she alighted

and a second one at the point "C" to the east. About fifty or sixty persons were on the car and it appears that all of them alighted for the purpose of changing. The plaintiff testified that about half of them preceded her in getting off the car and started down the space between the tracks to the point "D."

The south rail of the inside track of the loop on which stood the car from which plaintiff alighted was distant from the north rail of the Broadway track at the nearest point about ten feet, and at the point "D" it was 13 feet between those inside rails. The normal overhang of a car standing on a straight track was 18 or 20 inches, so that if two cars were standing opposite each other at "C" and "B" and the track were straight they would be 9 or 10 feet apart. In making the curve going east, however, the overhang at "C" was five feet 9 inches. A little further along at the point marked "XX" the overhang was six feet. At the time of the trial a concrete walk ran down between the tracks. At the time of the accident a rolled gravel bed was along there. The passengers who got off the car at "A" walked eastward along that space in order to cross over to the Broadway car at point "B." Plaintiff got as far as point "D" when a car standing with the rear near point "C" started up and in turning the curve the overhang swung out and struck her, causing the injuries for which she sued. She testified that she walked until she got about eight feet from the back of the Broadway car; that she was about five feet from the track at point "C" when he started to turn southwardly and in just a second she was struck. No gong was sounded nor signal given from the car that started. In going along to that point other people took the same route and walked the same way. There was no obstruction between her and the car. A conductor was standing on the rear platform of the car on Taylor Avenue, which struck her. Another passenger, Marie Sutter, who was in advance of the plaintiff, testified that the passengers got off the Taylor Avenue car and walked down between the tracks to take the Broadway car. She did not see the accident but heard Mrs. Took scream and saw her after she was hit.

Plaintiff introduced two or three physicians who testified to the nature of her injuries. Defendant introduced no evidence except two physicians who testified only to the nature and extent of the plaintiff's injuries. On this evidence the jury returned a verdict April 11, 1929, awarding her damages in the sum of $10,208.33. The defendant filed a motion for new trial which the court sustained September 9, 1929, and from the order sustaining the motion the plaintiff appealed.

The court in sustaining the motion for new trial stated it was upon assignments 7 and 8 in the motion, which related to instructions 1, 2 and 3, given on behalf of the plaintiff. Each of those instructions the court held was erroneous in the same particular. Each one of them

is of great length and it is unnecessary to set them out. Instruction 1 directed that if the jury should find the facts as related regarding the plaintiff's alighting from the car on Taylor Avenue and "walking eastwardly by the most direct route customarily and habitually used by passengers for the purpose of transferring to a Broadway street car, and "that *immediately in front* of the Taylor Avenue car from which plaintiff had alighted there was another of defendant's Taylor Avenue street cars standing still, . . . and that said latter Taylor Avenue street car was caused and permitted by the defendant, his agent and servants, to start forward to traverse said loop or curve, and thereby cause said platform and overhang of said street car to strike plaintiff."

And in finding other facts relating to defendant's negligence they would find for the plaintiff.

Instruction 2 and Instruction 3 each has the same phrasing requiring the same finding in order to return the verdict for plaintiff.

The court handed down a memorandum in sustaining the motion in which it was said:

"The three instructions given for her so predicate her right of recovery, that is that she was struck by the car on the Taylor Avenue track which *immediately preceded,* on that track, the Taylor Avenue car she had left for the purpose of taking the Broadway car. Her evidence makes it clear that there were three Taylor Avenue cars on the track; the one from which she had descended, one just ahead of that and then another ahead of the second car and standing at point "C," on the plat used in connection with her evidence. It was the rear end of that last car when moving forward around the curve that struck her. Miss Sutter said there were three cars on that track and that plaintiff was struck by the car she had traveled on. Mrs. Took went back on the stand and denied that was the car struck her, but she made no change in her previous explicit testimony in chief and cross, that it was the third car—the car second ahead of the one she left—by which she was struck. The allegation in the petition and the instruction for plaintiff are, therefore, contradicted by plaintiff's own testimony."

The plaintiff testified that cars were all around the loop; that three cars were stopped at the point where she alighted at the Taylor Avenue car, two in front of her car; that she walked east past one car and the second car from the one from which she alighted struck her when it started up.

Mrs. Marie Sutter testified that she was certain that Mrs. Took was struck by the car from which she alighted. That it started up and swung around at the point "C." The petition alleged and the instruction told the jury to find that it was neither, but the car "immediately" in advance of the car from which she alighted which

struck her. This is the error upon which the court sustained a motion for new trial.

■ I. At most this would be a variance between the pleading and the proof. Section 817, Revised Statutes 1929, is as follows:

"Sec. 817. *Variance, when deemed material.* No variance between the allegation in the pleading and the proof shall be deemed material, unless it has actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits; when it shall be alleged that a party has been so misled, that fact shall be proved to the satisfaction of the court, by affidavit showing in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as shall be just."

The respondent contends that the ruling was correct and cites several cases in support of his position, among them Dixon v. Construction Company, 318 Mo. 50, 298 S. W. 827, where it was held, l. c. 62, that an instruction broader than the evidence or the pleadings was reversible error. In that case the erroneous instruction authorized the jury to find for plaintiff on an act of negligence of which there was no proof.

In State ex rel. Goessling v. Daues, 314 Mo. 282, l. c. 287, 284 S. W. 463, it was held not error to refuse an instruction not based on any evidence. In each of those cases it was held error to allow a recovery on finding some act of negligence as a *cause of action* which was not proved. Of course that would be a total failure of proof, "in its entire scope and meaning" as expressed in Section 1001, Revised Statutes 1929. In this case the difference between the allegation and the proof was in relation to a mere incident which did not affect one way or the other the negligent act of the defendant which caused the injury. It was the sudden starting of a car while plaintiff was walking along the regular path near it and its outward swing as it turned the loop which caused the injury. Whether it was the first car or the second car made no material difference in the cause of action. The effect was exactly the same. It is a totally different principle, where an act of negligence not proved to have caused an injury was predicated in an instruction and the jury authorized to find for plaintiff upon it. In the present case it was the same act of negligence; it was the same incident and under exactly the same circumstances and it didn't matter which particular car caused it. At most it was a variance and the defendant could not take advantage of it without complying with the provisions of said Section 817; he must prove to the satisfaction of the court by affidavit showing in what respect he was misled. If the court had found the variance material it could have ordered an amendment.

■ In this case all the evidence was introduced without objection. The petition alleged that it was the car *immediately* in front of the one from which plaintiff alighted which caused the injury. Mrs.

Took swore it was the third car and Mrs. Sutter swore it was the car from which plaintiff alighted. There was no evidence that it was the car immediately in front of the one from which she alighted. In failing to object to the evidence or to bring the variance to the attention of the court, defendant is in no position to complain now. [Maxine Realty Co. v. McMinn, 23 S. W. (2d) 214, l. c. 215; Rumbolz v. Bennett, 86 Mo. App. 174; Litton v. Railroad, 111 Mo. App. l. c. 147; Fisher & Co. v. Realty Company, 159 Mo. 562, 62 S. W. 443.] A failure of proof under Section 1001 is not where the cause of action or defense is unproved in some particular or particulars only, but it must be unproved "in its entire scope and meaning," before it may be deemed not a variance but a failure of proof. The evidence as to which particular car swung around and caused the injury is one feature only of the incidents affecting the jury. The entire scope and meaning was untouched by that exigency.

■ II. Section 1062, Revised Statutes 1929, applies to an instruction of this character, as follows:

"Sec. 1062. *Case not reversed in absence of error.*—The Supreme Court, or courts of appeals shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action."

How can it be said that this alleged error in the instruction "materially affects" the merits of the action? The trial court in its memorandum did not say so, but based its ruling squarely on the technical, unimportant variance between the proof and the facts upon which the plaintiff was allowed to recover. What difference did it make whether the second car or the third car struck plaintiff? How could it make any difference in defendant's liability? In the character of the plaintiff's injury? In the defense of the action?

It is not claimed that there was any difference in the "make" of the several cars, in the extent of the outswing or method of handling. There was no dispute or discrepancy in the evidence as to the place where the injury occurred. The fatal error in the opinion of the trial court turned upon whether, and how many, other cars were before or behind the car which caused the injury—other cars which had no effect upon the incident.

If the trial court had overruled the motion for new trial the judgment could not be reversed for the alleged error which caused the motion to be sustained.

■ III. Appellant, however, makes the point that since the trial judge sustained the motion the order should be affirmed because of his intimate knowledge of the whole situation, and he determined

the instruction to be prejudicial. He did not find the instruction was prejudicial; he did not say that the instruction embarrassed the defendant in making his defense, or that there could have been any different result if the instruction had not contained the phrase complained of. The entire record negatives the idea that the instruction could have been prejudicial. On no possible theory can it be said that the verdict would have been different if the instruction had been expressed in terms which the court pronounced correct.

IV. Respondent further claims that the motion for new trial was properly granted because this instruction authorized the jury to find that, after the plaintiff alighted from the Taylor Avenue car she walked "by the most direct route customarily and habitually used by the passengers for the purpose of transferring to board one of defendant's Broadway street cars." It is argued that there was no evidence to warrant the quoted part of the instruction.

The plaintiff testified that she was about five feet from the track when she was struck. At that point the inside rails of the tracks were 13 feet apart. She was, therefore, within eighteen inches of the center between those tracks. She was passing along that space with thirty or more other people. A concrete walk was there at the time of the trial; at the time of the accident a rolled gravel bed was there. It was put there to walk on. There was no other way for people alighting at "A" to go to "B" except along between the tracks. The rolled gravel bed must have been wide enough for people to walk on. If it was three feet wide and in the middle of the space, plaintiff was on it, for she was five feet from the track. She testified that prior to the accident she had been going over the same route on the Taylor Avenue car, walking down that space and taking the Broadway car. She had done it for a year. She had never before gotten off a Taylor Avenue car as far back as she did this time. She usually got off in front of the office at the other corner of the building. She said: "I always walked to the same point marked by the letter 'B' to get a car." It was not necessary for her to testify that anyone desiring to take a car at "B" after disembarking from a Taylor Avenue car must walk between the tracks at that point. They certainly would not walk on the tracks. So far as the evidence shows the only way they could go was between the tracks.

The point is made that she was out of the customary route because she was struck. In swinging around the curve at that point the overhang of a car was 5 feet 9 inches, about four feet beyond the overhang on the straight track. She testified that she didn't think it would swing out so far. Her evidence shows she was not off the direct and customary route.

260

■ V. The further point is made that the defendant's own testimony convicts her of negligence as a matter of law precluding recovery.

The respondent did not make that point in his motion for rehearing unless it can be said to be involved in his assignment of error in overruling his demurrer to the evidence. Respondent does not claim that contributory negligence would bar plaintiff's recovery. It was not pleaded. It is merely claimed that her *sole* negligence caused the injury because she got out of the usual route which passengers pursued in passing from one car to the other, in this instance. On the contrary, as just pointed out, the evidence does not show that she was out of the usual course. Besides, her negligence, if she was negligent, could not have been the sole cause. She testified that the conductor on the car which struck her was standing on the back platform. He saw where she was walking, and where the other people were walking. He knew the extent of the overhang in making the curve. Knowing how far it would swing out, seeing where she was, he was negligent in starting up to produce that swing without warning her and the other people. Several people were passing there, the Broadway car was waiting for them and naturally they were in a hurry to get to it. They were crowding along a place ordinarily safe from any contact with the cars on the Taylor Avenue line. The defendant was bound to anticipate that people would walk along that space and, knowing the great outswing of the car in turning the curve, was negligent in failing to provide some means of preventing an injury on that account.

Respondent argues that plaintiff was not in imminent peril when the car started. If she was where she was likely to be struck by the outswing of the car she was in peril just as much as if she had been standing on the track. All of which the defendant knew, or by the exercise of reasonable care could have known. There was ample evidence that the plaintiff was in peril if the car should start; that the respondent knew it . . . was obliged to know it. The case was properly submitted under the humanitarian rule. [Stevens v. Wabash Ry. Co., 14 S. W. (2d) l. c. 509.]

It is claimed further that the verdict was excessive and justified the court in sustaining the motion for new trial. The court did not sustain the motion upon that ground, and we must presume that the court did not regard the verdict as excessive. The trial judge was in better position than the appellate court to judge the evidence as to the extent of the injuries and excessiveness of the verdict. If the court had overruled the motion we would not reverse the case on that ground as the evidence shows here.

The judgment is reversed and the cause remanded with directions to the trial court to reinstate the verdict and render judgment accordingly. All concur.