William B. EDELEN (Plaintiff) Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY,
a Corporation (Defendant) Appellant.

No. 29056.

St. Louis Court of Appeals.

Missouri.

May 17, 1955.

Motion for Rehearing or for Transfer
to Supreme Court Denied
June 10, 1955.

Lloyd E. Boas, John Bardgett, St. Louis, for appellant.

Gregg Wm. Keegan, St. Louis, for respondent.

WOLFE, Commissioner.

This is an action for damages arising out of personal injuries which the plaintiff is alleged to have suffered by reason of being struck by a bus operated by the defendant. The trial resulted in a verdict for the defendant and thereafter the court sustained the plaintiff's motion for a new trial. From the order granting a new trial the defendant has appealed.

The petition alleges that the plaintiff was struck by one of the defendant's buses while walking in the traveled portion of the Wellston loop in St. Louis County. There follow four counts of primary negligence charging the defendant with failure to sound a warning, driving at an excessive speed, failure to keep a lookout, and failure to stop.

Then follows a count in humanitarian negligence charging the defendant with negligently failing to stop, swerve, slacken the speed of the bus, or sound a warning after the operator of the bus saw or by the exercise of the highest degree of care should have seen the plaintiff in a position of imminent peril of being struck. The case was submitted by the plaintiff only on the ground that there was a failure to warn under the humanitarian doctrine.

The plaintiff testified that on August 28, 1953, he was on his way home from the Missouri Athletic Club in downtown St. Louis where he had been employed. His home was in Overland. He had traveled to Wellston by the Page-Wellston line of the defendant. This line terminated at the Wellston loop. The plaintiff intended to walk two blocks west of the loop to board an Overland bus operated by the St. Louis County Transit Company. It was about 7:00 p. m. when he reached the loop and left the Page-Wellston bus. The loop is on the north side of Easton Avenue. It is paved with concrete and serves as a terminal for six bus lines of the Public Service Company. At its most western side is a lane for the Ramona buses and the next lane east of that is for the Page-Wellston buses. The plaintiff stated that the bus from which he alighted stopped in the most eastern part of the loop area. He said that he started westwardly across the loop in a path parallel to and about 10 or 15 feet south of a line of buses that were all stopped headed south. According to his testimony there were four or perhaps six buses stopped in a line on the north part of the area. He stated that he glanced at the buses as he was opposite the most western one in the line. He was struck by a bus but did not know what one. He was thrown to the ground after coming in contact with the right front of a bus near the right headlight. His own testimony was rather vague. He first said that a red object hit him and when asked if he saw it he said that he probably gave it a glance and it was a bus. He said that he heard no horn sounded.

A witness by the name of Homer Silvey, testifying on behalf of the plaintiff, stated that he arrived at the loop on a Ramona bus. It stopped in its regular lane which was the most western bus lane in the loop. He left by the front door and walked in front of the bus from which he had just stepped to proceed eastwardly. As he was thus crossing in front of the Ramona bus he saw the plaintiff struck by the right front of a Public Service Company bus which was headed south. He said that this took place in the Page lane about eight feet east of where the Ramona bus had stopped, and that he heard no horn sounded. He said that the impact threw the plaintiff to the ground causing his head to strike the pavement and that the bus proceeded on southwardly toward Easton Avenue. He saw the plaintiff and the bus at the moment of impact and did not know what particular line the bus operated on. The witness was shown a number of photographs of the loop but could not point out where the plaintiff was struck. He said that he helped the plaintiff to his feet and walked him to a shop by the tracks on the west side of the loop. The plaintiff was bleeding from his face.

A supervisor for the defendant company, as a witness for the plaintiff, testified that he was called to the loop by a company dispatcher between 6:30 and 7:30 p. m. When he arrived he saw the plaintiff sitting by a store on the west side of tracks that ran along the west side of the loop. About 85 feet from the place that the plaintiff was sitting there was a blood stain, approximately the size of a saucer, on the pavement of the loop near the Ramona bus lane. He tried to get the plaintiff's name but he was incoherent and drunk. He later learned the name when a policeman arrived and found some identification of the plaintiff in his billfold.

The plaintiff also called a policeman as a witness who stated that he found the plaintiff sitting in the same position the supervisor found him and that the plaintiff was intoxicated and that he learned the plaintiff's name by looking in his billfold. With

another officer he took the plaintiff to a hospital.

There was medical testimony which we need not set out as it is not relevant to the issues presented for determination.

The defendant, after unsuccessfully moving for a directed verdict, put in evidence hospital records which disclosed that the plaintiff was intoxicated.

The bus drivers who were operating buses in the loop at the time of plaintiff's injury each testified that their bus struck no one. One bus driver testified that he had seen plaintiff on his hands and knees attempting to get up and that he later saw someone assist plaintiff to the shop by the tracks.

As stated, there was a verdict for the defendant and the court sustained plaintiff's motion for a new trial. The ground upon which the new trial was granted was that the court had erroneously given a sole cause instruction on behalf of the defendant. The defendant, appealing, urges that the plaintiff failed to make a submissible case and requests us to reinstate the verdict and judgment for the defendant.

As stated, the theory that the plaintiff pursued was that the defendant's operator saw or could have seen him in a position of imminent peril of being struck by the bus in time thereafter to have sounded a warning and thereby have avoided striking him. Thus he submitted his case upon a failure to warn under the humanitarian doctrine.

■ It is an established rule that we view the evidence in a light most favorable to the plaintiff when we are called upon to determine whether or not plaintiff has made a case properly submissible to a jury. Appraising the plaintiff's evidence in this manner it would appear that he was crossing the loop westwardly in a place where pedestrians customarily cross and that about 10 or 15 feet to his right were some buses that were not moving. He looked at the last standing bus as he was opposite it and thereafter he was struck by the right side of some bus moving southwardly toward Easton Avenue.

This situation is similar in a number of respects to the facts considered in Took v. Wells, 331 Mo. 249, 53 S.W.2d 389, 393. There the plaintiff was standing in a place provided for passengers to stand in the Broadway and Taylor loop. As she stood there a car started. She was struck by the overhang as it rounded a curve in the track. The court held that the plaintiff, as she stood by the track, was in a position of peril "if the car should start" and that the case was properly submitted under the humanitarian theory. The case was criticized by an opinion of the Missouri Supreme Court en banc in Smith v. Siedhoff, 209 S.W.2d 233. This court noted the criticism in McClanahan v. St. Louis Public Service Co., 242 S.W.2d 265, and certified that case to the Supreme Court for a re-examination of the law. In McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704, 706, the court en banc expressly stated that Took v. Wells, supra, improperly applied the humanitarian doctrine. The theory of the Took case and others similar to it, which were overruled by the McClanahan case, was that " 'plaintiff was in a situation such that, while not in imminent peril, absent the negligent act of defendant in question, he was in imminent peril if such act was committed' ". It was pointed out that such a theory was not sound for if followed all persons whose injuries were occasioned by the wrongful act of another would be in imminent peril within the meaning of that term under our humanitarian rule. The court went on to say in such case "that defendants were liable, if at all, not for negligence under the humanitarian rule but for their primary conduct amounting to negligence, or amounting to willfulness, wantonness or recklessness."

■■ Returning to the facts before us, we find the plaintiff in a position where he had a right to be as the plaintiff was in the Took case. Similar to the position of the plaintiff in the Took case he was in no position of peril of being struck by the bus that he saw standing still until it was negligently started without warning in such

close proximity to him as to strike him. This would be an act of primary negligence and not a situation falling within the humanitarian doctrine. Likewise if it was some other bus that traveled through the place where pedestrians walk there was a duty to keep a watch, a duty to warn, and a duty not to travel at an excessive rate of speed. The neglect of any of these would be primary negligence for which the defendant would be liable if a pedestrian were struck. None of these acts, however, would place the plaintiff in imminent peril within the meaning of the humanitarian doctrine. Under the doctrine the imminent peril of the plaintiff does not arise because of the negligence of the defendant and the negligence for which the defendant is chargeable is a failure to act after the peril arises. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482; Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782; McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704.

The plaintiff abandoned all allegations of negligence other than the one upon which the case was submitted and we are obliged to limit our examination of the evidence to the theory which he chose to pursue. Bean v. St. Louis Public Service Co., supra; Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91.

For the reasons stated, the plaintiff made no case properly submissible to the jury and this being true any questions of erroneous instructions are of no importance and the verdict and judgment were for the right party.

It is therefore the recommendation of the Commissioner that the judgment of the circuit court be reversed and the cause remanded with directions to set aside the order granting plaintiff's motion for a new trial and to enter a judgment in conformity with the jury's verdict.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly reversed and the cause remanded with directions in accordance with the recommendation of the Commissioner.

RUDDY, Acting Presiding Judge, and NOAH WEINSTEIN, Special Judge, concur.